## GEORGIA AND ALABAMA RAILWAY *v.* POUND.

1. As was decided in *Almand* v. *Georgia R. & B. Co.*, 95 *Ga.* 775, "where goods are shipped by rail and arrive at destination within the usual time required for transportation, and are there deposited by the railroad company in a place of safety and held ready to be delivered to the consignee on demand, the company's liability as a common carrier, in the absence of a contrary custom of trade as to delivery, ceases, and its liability as a warehouseman begins."

2. In order to show the existence of a custom varying the general rule as above announced, at a particular place, by reason of the railroad company having observed a usage of notifying consignees of the arrival of goods, it must be affirmatively proved that this usage was of an established and general nature, and that the notices given in pursuance thereof were of such character as to indicate, or to reasonably warrant the inference, that the company intended to remain liable as a common carrier until the consignee, in each instance, had had reasonable time and opportunity to remove his goods from its custody.

3. Such a custom is not sufficiently proved by evidence which shows no more than that the company had been in the habit of notifying a particular customer, by postal card, of the arrival of his goods and informing him that storage or demurrage would be charged thereon unless they were called for within a time specified, and that it had in this manner, and also by messages by telephone and otherwise, given similar notices to other customers, in some of which it was stated that unless the goods were removed as requested they would be "held" or "stored" at the owner's risk.

4. It is not, in the trial of an action against a railroad company for the value of goods alleged to have been burned in its depot, proper to allow counsel for the plaintiff to argue to the jury that his client is entitled to recover money collected by the company for insurance, when there is no evidence that the plaintiff's goods were covered by insurance or that the defendant received anything from an insurance company on account of the loss thereof.

Argued May 18, — Decided June 5, 1900.

Action for damages. Before Judge Littlejohn. Dooly superior court. September term, 1899.

*E. A. Hawkins*, for plaintiff in error.

*W. H. Dorris* and *Pearson Ellis*, contra.

Lewis, J. This was a suit brought by B. B. Pound against the Georgia and Alabama Railway, for damages resulting from loss by fire of certain dry-goods in defendant's depot at Cordele, Ga. It appears from the record that the freight depot of plaintiff in error was accidentally destroyed by fire on August 4, 1897, at which time defendant in error had a shipment of dry-

goods burned in said depot. These goods were received in Cordele on July 27, 1897, and placed in the company's warehouse, having arrived at destination within the usual time required for transportation. It is not contended that the fire was caused by the negligence of the railway company, or its servants or employees, and there was no proof tending to show any carelessness or negligence upon the part of the company But defendant in error relied upon the contention that the company had established a custom in Cordele of notifying its customers of the arrival of goods, and that therefore its liability as carrier continued until such notice was given. In this instance he testified that he had received no notice of the arrival of these goods until a day or two after their destruction. After hearing evidence, the jury returned a verdict for the plaintiff; whereupon the defendant made a motion for a new trial, and alleges error in its bill of exceptions upon the judgment of the court below in overruling this motion.

1. Civil Code, § 2279, declares: "The responsibility of the carrier commences with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them. It ceases with their delivery at destination according to the direction of the person sending, or according to the custom of trade." The law nowhere imposes upon common carriers the obligation of notifying consignees of the arrival of their freight at the point of destination, provided it has arrived in the due course of transportation. As a general rule a railroad company is responsible as common carrier only for the safe deposit of goods shipped by freight upon the platform or in the warehouse of the road at the end of their transit, there to await delivery to the consignee when he should call for them; and from the time of such deposit, even without notice by the carrier to the consignee, the liability of the railway is usually changed from that of a common carrier to that of a warehouseman. See this doctrine thoroughly discussed in Hutchinson on Carriers, § 367 et seq. This general doctrine has been clearly recognized by repeated decisions of this court, and the language of the first headnote is copied from the decision in the case of *Almand* v. *Georgia R. & B. Co.*, 95 *Ga.* 775. See also authorities therein cited.

2, 3. As a general rule of law, then, it follows that after goods are placed by the company at their destination within the usual time required for transportation, and are there by it deposited in a place of safety and held ready to be delivered on demand, its liability as a common carrier ceases, and that of a warehouseman commences. The only exception to this rule is where the custom of trade is shown to be otherwise as to delivery. In order to show the existence of such a custom varying this general rule at a particular place, by reason of the company having observed a usage of notifying consignees of the arrival of goods, it should be affirmatively shown that this usage was of an established and general nature. The notice given in pursuance thereof should be of such a nature as to reasonably warrant the inference that the company intended to remain liable as a common carrier until the consignee, in each instance, had reasonable time and opportunity to remove his goods from its custody. Upon examining the record in this case, we think it fails to show the establishment of such a usage and custom on the part of the plaintiff in error as would make it liable as a common carrier until notice is given by it to the consignee of the arrival of his goods. The plaintiff below testified in his own behalf, in effect, that he was never given any notice of the arrival of the goods sued for until after they were destroyed by fire; that the company's agent usually sent out postal cards stating that there were so many cases of shoes, notions, etc., arrived at a certain time, and, if not removed within a specified time, that they would be subject to a certain amount of demurrage. This card he had not received before the destruction of these goods by fire. The card referred to was only a notice to the consignee that, unless the goods were removed by a certain time, he would be charged storage for them; and he testified that he thought the main feature of the notice was to carry out its purpose of not charging such storage or demurrage until after it gave that notice; and he further admitted in his testimony that he could not say that he had always been getting such notices on the arrival of his goods at the defendant's depot in Cordele. There were a few other witnesses introduced who testified to receiving the same notice as to goods consigned to them. We do not think it can be fairly inferred

from the contents of this notice that it. was the intention of the plaintiff in error to remain liable as a common carrier, while the goods were stored in its warehouse at the point of destination, until notice of their storage was given to the consignee; but the evident purpose of this notice was simply to notify the consignee that, if he did not remove his goods at a certain time, he would likewise be charged with storage. The only custom the record tends to establish was for the company to give such notice to a party before preferring against him a charge for demurrage, and we can not see how it can be implied from this custom that the company thereby agreed to remain liable as a common carrier up to the time of the notice in reference to storage. It is true there was some evidence introduced in behalf of the plaintiff below, by two or three witnesses, that they had received notices to the effect that, unless their goods were removed from the company's warehouse, they would be held or stored at the owner's risk. It might with plausible force be argued that a notice of this sort carried with it the implication that the common carrier retained the goods entirely at its own risk as a common carrier or an insurer of their safety until this notice is given. But the evidence in the record absolutely fails to establish anything like a general custom of the company to give such notice, and it was only shown in one or two isolated instances. The testimony in behalf of the company was to the effect that there was no special custom of dealing with customers in reference to giving them notice in regard to the arrival of freight; that they were sometimes notified by postal cards, sometimes by telephone, by draymen, and in person, and we think there is nothing in the record to contradict the proof, offered in behalf of the company, that there was really no fixed rule upon this subject. The evidence fails to establish such a usage or custom on the part of the company's employees as would authorize the conclusion that the company, at this particular station, had waived its clear legal rights simply as a warehouseman, and had assumed the responsibility of a common carrier and insurer of the property up to the time of giving notice to the consignee that his goods had arrived at destination, and had been stored in its warehouse.

4. Complaint is made in the motion for a new trial that the

court erred in permitting, over objection of counsel for the company, plaintiff's attorney to argue to the jury in conclusion that the plaintiff was entitled to recover of the defendant at least his pro rata of the insurance money upon the contents of the depot. While there is some evidence in the record showing that there was a collection of some insurance money as the result of loss occasioned by this fire, yet the evidence is uncontradicted that none of the goods of the defendant in error were covered by this insurance, nor does it appear that the company received anything from the insurance company on account of plaintiff's loss. It was, therefore, error to permit counsel for plaintiff below to contend for liability of the railway company on account of any insurance it collected growing out of this fire.

*Judgment reversed. All concurring, except Fish, J., absent.*