## STATE *vs.* INTOXICATING LIQUORS.

### Washington.    Opinion March 2, 1901.

*Intox. Liquors.    Interstate Commerce.    Const. Law.    R. S., c. 27.    Stat. of U. S.*
*Aug. 8, 1900.*

Upon a seizure of intoxicating liquors by a sheriff, under R. S., c. 27, and claimed by the common carrier, in whose possession they were found, it appeared that the intoxicating liquors seized, libelled and claimed by the railroad company, were shipped from Boston, Massachusetts, by the Boston & Maine Railroad and connecting lines, to Machias in this state.    The liquors were consigned to the shippers.    Although the case does not show, there was undoubtedly a continuous way-bill.    They arrived at Machias on the morning of the twenty-third of October, at about nine o'clock in the forenoon, and

were transferred to a freight-house used exclusively by the railroad company, where, on the afternoon of the next day, at about four o'clock, they were seized by the officer. There had been no delivery of the liquors and no notice given to any one of their arrival.

*Held;* that the liquors in question, at the time of their seizure, had arrived within the state so as to be subject to the operation and effect of the laws of this state enacted in the exercise of its police powers, within the meaning of the Act of Congress of August 8, 1890, commonly known as the "Wilson Act," which provides that all intoxicating liquors "transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers."

*Also;* that in this case the transportation had been completed at the time of the seizure. The liquors had arrived at their final place of destination; they were not again to be moved by the railroad company, and nothing further remained to be done by the company except that the liquors were to be held by them to await the action of the shippers. And for these reasons the case differs in material respects from the case of *Rhodes* v. *Iowa,* 170 U. S. 412, decided by the Supreme Court of the United States, (recently followed by this court in *State* v. *Intoxicating Liquors,* 94 Maine, 335), and that decision is not an authority for this case.

While we fully recognize that the question as to whether a state statute is in contravention of any provision of the federal constitution is for the final determination of the federal Supreme Court, and that its decision, when the question is presented, is conclusive, we do not consider it obligatory upon this court to hold, against our own judgment, that a statute of our state is in violation of that constitution, until it has been so decided, even if it may be possible, judging from certain remarks in that court's opinion, that our judgment may be overruled by that tribunal.

*State* v. *Intox. Liquors,* 94 Maine, 335, distinguished.

*Rhodes* v. *Iowa,* 170 U. S. 412, distinguished.

On report. Judgment for State.

Appeal by the Washington County Railroad, as claimant, from a decree of forfeiture of intoxicating liquors, and from whose possession they were seized. The case appears in the opinion.

*Fred I. Campbell,* county attorney, for State.

*W. R. Pattangall,* for claimant.

Counsel cited: *State v. Intox. Liquors,* 83 Maine, 158, and cases; *Rhodes v. Iowa,* 170 U. S. 412; *Vance v. W. A. Vandercook Co., Ib.* 438.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

WISWELL, C. J.   The case comes to the law court upon report. The only question presented is, whether or not the statute of this state, authorizing the seizure of the intoxicating liquors in question, is in violation of that clause of the constitution of the United States which confers upon Congress the power "to regulate commerce with foreign nations and among the several states," in so far as it applies to liquors which are the subject of interstate commerce transportation.   If so, the warrant under which the officer acted and his seizure were, of course, illegal and void.

It is contended that the question has been settled by the Supreme Court of the United States in the case of *Rhodes* v. *Iowa*, 170 U. S. 412, which case has been recently followed by this court in *State* v. *Intoxicating Liquors*, 94 Maine, 335.   If the question here involved has been decided by the United States Supreme Court, in the case above referred to, we must certainly recognize the authority of that court in passing upon a provision of the federal constitution and upon congressional legislation thereunder, and be governed by the result.

But we do not think that the question here presented has been passed upon by that court.

The facts in this case are as follows:   The intoxicating liquors seized, libelled and claimed by the railroad company, were shipped from Boston, Massachusetts, by the Boston & Maine Railroad and connecting lines, to Machias in this state.   The liquors were consigned to the shippers.   Although the case does not show, there was undoubtedly a continuous way-bill.   They arrived at Machias on the morning of the 23d of October, at about 9 o'clock in the forenoon; they were transferred to a freight house used exclusively by the railroad company, where, on the afternoon of the next day, at about four o'clock, they were seized by the officer.   There had been no delivery of the liquors and no notice given to any one of their arrival.

The question presented, then, is whether or not these liquors,

at the time of their seizure, had arrived within the state so as to be
subject to the operation and effect of the laws of this state enacted
in the exercise of its police powers, within the meaning of the
Act of Congress of August 8, 1890, commonly known as the Wil.
son Act, which provides that all intoxicating liquors "transported
into any state or territory, or remaining therein for use, consump-
tion, sale or storage therein, shall, upon arrival in such state or ter-
ritory, be subject to the operation and effect of the laws of such
state or territory, enacted in the exercise of its police powers, to the
same extent and in the same manner as though such liquids or liq-
uors had been produced in such state or territory, and shall not be
exempt therefrom by reason of being introduced therein in original
packages or otherwise. "

In the case of *Rhodes* v. *Iowa*, supra, the package containing the
intoxicating liquors had been transported from a point in the state
of Illinois to Brighton in the state of Iowa, under a continuous
way-bill.  It had arrived at the station in the latter place and had
been removed by the trainmen from the car to the station platform.

Shortly afterwards, the station agent, in the discharge of his
duties, moved the package into a freight warehouse, about six
feet from the platform, where it was seized by an officer under a
search warrant, after it had been there for about an hour.  But
the legality of that seizure was not in question in this case.  The
station agent, Rhodes, was proceeded against for the violation of
the statute of the state of Iowa, in knowingly, wilfully and un-
lawfully receiving, for the purpose of delivering to another, intox-
icating liquor that was being unlawfully transported from Burling-
ton, Iowa, to Brighton, Iowa.  The liquors were in fact transported
from Dallas, Illinois to Brighton, Iowa, under a continuous way-
bill and over connecting lines of railroad.  Rhodes was convicted
before the magistrate and also upon appeal in the District Court,
and the conviction was sustained by the Supreme Court of Iowa,
upon the ground that the consignment of liquors had arrived in the
state, within the meaning of the Wilson Act, as soon as it crossed
the state boundary and entered the state, although the contract of
carriage was not then completed.  *State* v. *Rhodes*, 90 Iowa, 496.

The question actually presented to and decided by the Supreme Court of the United States, in *Rhodes* v. *Iowa*, was whether the liquor had arrived in the state, within the meaning of the Wilson Act, at the time of the act complained of, the station agent, the plaintiff in error, in transporting the package from the station platform to the company's freight house. The court held that this act was a part of the interstate commerce transportation, and was consequently within the exclusive control of Congress under the interstate commerce provision of the constitution, and that the Wilson Act did not apply and was not intended to apply until the act of transportation had been entirely completed.

It is true, that in the opinion of the court this language is used: "We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and *delivery there to the consignee.*"

But it does not seem to us that this was necessarily involved in the question decided. If the act of moving the package from the platform to the freight house was a part of the interstate commerce transportation, as the court held it was, and the transportation was not consummated until the package had been moved to and deposited within the freight house, so that the liquors had not arrived within the state, until that act had been performed, then the Iowa statute could not apply to any part of such transportation, and it was unnecessary to a decision of the point involved, to hold that such transportation was not completed until delivery to the consignee.

We are of the opinion that, in this case, the transportation had been completed. Nothing further remained to be done by the railroad company. The liquors had arrived at their final place of destination. They were not again to be moved by the railroad company. The continuity of transportation from the place of shipment to that of consignment had not been interrupted, and the liquors had been moved to the place provided by the carrier for the purpose, to await the action of the shipper.

It is true, that no notice had been given of their arrival: there

was nobody there to whom notice could have been given. And the question is not, whether or not the liability of the railroad company for a loss continued as a carrier up to the time of the seizure, or had become that of a warehouse man. It is simply whether these liquors, when the actual transportation had been entirely completed, and when they had not only arrived at the place of their destination, but had been moved by the employees of the railroad company from the car to the company's freight house, there to await the order of the shipper, had arrived in the state, within the meaning of the Wilson Act, so as to be subject to our laws.

The language of the Wilson Act is, all intoxicating liquors "transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory," etc. In this case the liquors in question had been "transported into" this state, to its place of ultimate destination within the state. They were "remaining therein" for the purpose of "storage," within the meaning of this act, we think, even as construed by the majority of the court in *Rhodes* v. *Iowa.* We are of opinion that the transportation had ceased, and that the storage had commenced.

We fully recognize that the question as to whether a state statute is in contravention of any provision of the federal constitution is for the final determination of the federal Supreme Court, and that its decision, when the question is presented, is conclusive; but we do not consider it obligatory upon this court to hold, against our own judgment, that a statute of our state is in violation of that constitution, until it has been so decided, even if it may be possible, judging from certain remarks in that court's opinion, that our judgment may be overruled by that tribunal.

It will be observed that the case recently decided by this court, (*State* v. *Intox. Liquors, Grand Trunk Ry., claimant,* 94 Maine, 335,) above referred to, upon the authority of *Rhodes* v. *Iowa,* was entirely different from this. There the liquors were seized while they were in actual transit. The car in which they were being transported had not even arrived within the limits of the city of its

destination.    The facts of that case brought it clearly within the decision of the Supreme Court.

The claim of the railroad company must therefore be disallowed.

The liquors will remain in the custody of the sheriff to be disposed of as provided by our statutes.

*So ordered.*