SOUTHERN EXPRESS COMPANY *v.* THE STATE.

1. Where upon the trial of a criminal case the defendant neither demurs to the indictment nor moves to quash it, but voluntarily goes to trial upon the merits of the case, this court can not consider an assignment of error in a bill of exceptions sued out in such case, alleging that the trial court "should have ruled that [the accused] was not indictable at all for the offense charged in the" indictment.

2. Relatively to a package of whisky shipped by express from another State to a named person in a designated city in this State, to be there delivered to him upon his paying to the agent of the express company at that point a stipulated price therefor, the penal laws of this State in reference to the unlawful sale of intoxicating liquors become of force when such package has reached the point of its destination and is being held by such express agent until the sale of the whisky has been completed in accordance with such directions of the consignor.

Argued October 21, — Decided November 16, 1901.

Indictment for selling liquor. Before Judge Fite. Whitfield superior court. July 2, 1901.

*F. G. duBignon* and *R. J. & J. McCamy,* for plaintiff in error.
*Samuel P. Maddox, solicitor-general,* contra.

FISH, J. The accused, the Southern Express Company, was tried and found guilty, in the superior court of Whitfield county, of selling spirituous liquors contrary to law, upon the following state of facts: "A shipper in the State of North Carolina sent a package of whisky containing two gallons, through the defendant company, to be delivered to the consignee at Dalton, Whitfield county, Ga., on his payment for the same to the defendant's agent

at Dalton, together with the charges thereon. The whisky arrived at Dalton; the consignee called at defendant's office in Dalton, paid defendant's agent for the whisky $3.70; whereupon it was delivered to the consignee by the defendant's agent in the same package and condition it was shipped from North Carolina, to wit on the day named in the indictment. The money collected by defendant's agent at Dalton was sent through the defendant company to the shipper of the whisky in North Carolina and there paid to him. The defendant is a chartered company, being a common carrier of freight and engaged in the transportation for hire of interstate commerce, and the liquor for the sale of which it is here indicted was received and forwarded by defendant in the usual and ordinary transaction of its business as such common carrier. A sight draft drawn by the consignor on the consignee accompanied the shipment, and was turned over to the consignee by the agent of defendant upon his payment of the amount named in the draft. Defendant is not a railroad company, does not own the railroads over which its freight is transported, but employs various railroad companies to carry freight for it, paying them therefor." The express company sued out a bill of exceptions and brought the case here for review. It is recited in the bill of exceptions that the accused " contended that a corporation such as it is was not indictable under the sections on which the indictment is framed; and that under the facts admitted it was not guilty of any offense, as in all that was done by it it was justified under the third clause of section eight of the first article of the constitution of the United States, conferring on Congress the power 'to regulate commerce with foreign nations and among the several States,' and the acts of Congress passed thereupon; and that under the provisions of the act of Congress of August 8th, 1890, commonly known as the 'Wilson act,' it had power to do all that was shown in the agreed statement of facts; and it was therefore not guilty of any offense." The assignments of error in the bill of exceptions are: "first, that the court should have ruled that it was not indictable at all for the offense charged in ▓▓▓▓▓, and second, if indictable, that under the facts it was not g▓▓▓ ny offense."

1. It will be observed that the first assign▓▓▓ rror is, not that the defendant in the court below should ▓▓▓ found not guilty, because the proof showed that it could▓▓▓mit the offense with which it was charged, but the assig▓ent is, that the

court should have ruled that it was not indictable for the offense charged.    In *Eaves* v. *State,* 113 *Ga.* 750, this court held: " If an indictment be on its face fatally defective, because based on a statute no longer in force, advantage of the defect should be taken by demurrer or by motion in arrest of judgment.    In the absence of a demurrer, such defect is not ground for asking the direction of a verdict of acquittal, or, in a motion for a new trial, for setting aside a verdict of guilty as contrary to law."    See also *Boswell* v. *State,* ante, 40.    The defendant could have invoked a ruling of the court to the effect that it could not legally be indicted. for the offense charged, by demurring to the indictment, or moving to quash it. Instead of doing so, however, it voluntarily went to trial under the indictment, and now complains that the court did not make a ruling which was not legally invoked.    It was too late, after voluntarily going to trial upon the merits, to contend " that a corporation such as it is was not indictable under the sections on which the indictment is framed."    The accused did not make this contention in the way and at the time which the law provides.    As no ruling of the court below upon the validity of the indictment was legally invoked, this court can not consider an assignment of error based upon the failure of the trial court to rule in accordance with the contention of the plaintiff in error.

2. The second assignment of error is, that if the defendant was indictable, " under the facts it was not guilty of any offense."    This assignment is based on the contention, that, " in all that was done by it, it was justified under the third clause of section eight of the first article of the constitution of the United States, conferring on Congress the power 'to regulate commerce with foreign nations and among the several States,' and the acts of Congress passed thereupon ; and that under the provisions of the act of Congress of August 8th, 1890, commonly known as the ' Wilson act,' it had power to do all that was shown in the agreed statement of facts; and it was therefore not guilty of any offense."    Before the passage of the " Wilson act, a transaction as that disclosed by the facts in the record b      vould have fallen under the protection of the interstate c      clause of the Federal constitution; and the precise que      be determined is, whether it falls within the provisions      t of Congress.    That act was passed in consequence of th      ts produced by the decision of the Supreme.

Court of the United States in Leisy v. Hardin, 135 U. S. 100, where it was held, that, under the provisions of the constitution of the United States, merchandise imported from a foreign country, or from one State into another, could be sold by the importer thereof, in the original packages in which it was imported, free from the interference of State laws,. as until such sale the goods were not commingled with the mass of property in the State to which they were imported, but still retained the character of interstate-commerce goods. The effects of this decision were immediate and wide-spread, and practically annulled the efforts of certain of the States to suppress, or restrict, the traffic in intoxicating liquors within their limits. "Original package" depots and storerooms, and even "Original package saloons," sprang up in States and localities where by law the sale of intoxicating liquors was prohibited and made penal. Black, Intox. Liq. § 74. In order that this traffic might be suppressed by the States whose public policy was thus openly set at naught, and to give to all the States a like power, Congress passed the "Wilson act," the predominant purpose of which was to empower the States to prevent the sale of intoxicating liquors in the original packages in which they were imported. That act provides : "That all fermented, distilled, or intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." 26 U. S. Stat. 313, c. 728. It is impliedly admitted by the plaintiff in error that the agreed statement of facts shows that it sold the package of whisky in question in Whitfield county, Ga., as alleged in the indictment ; and this is in accordance with the decision of this court in Crabb v. State, 88 Ga. 585, where it was held: "The sale of whisky sent by express 'C. O. D.' is not complete until the whisky is delivered and paid for; and the express agent making the delivery and collection in a county where sale is lawfully prohibited is subject to indictment if he acts knowingly in completing the sale." So the contention of the plaintiff in error amounts to

simply this, that, although it sold the whisky in Whitfield county, Ga., at the time alleged in the indictment, it was guilty of no offense, because the sale was an interstate commerce transaction, which did not fall within the provisions of the "Wilson act," subjecting such liquor to the operation and effect of the laws of this State upon its arrival therein.

In support of its construction of this act, the plaintiff in error relies upon the decision of the Supreme Court of the United States in Rhodes *v.* Iowa, 170 U. S. 412. In that case it appeared that a box of intoxicating liquors was shipped, by rail, from a point in the State of Illinois to Brighton, Iowa, and, upon its arrival there, was placed by the trainmen on the platform of the railroad station, and shortly thereafter Rhodes, who was the station agent of the railroad company at that point, in the discharge of his duties, moved the box into the railroad freight-warehouse, which was about six feet from the platform where the box had been deposited when taken from the train. Upon this state of facts, he had been tried and convicted of a violation of an Iowa statute, which, briefly stated, prohibited and made penal the transportation, by any express company, railroad company, or any person, for any other person or corporation, of any intoxicating liquors, from one point or place to another point or place, within that State, without first being furnished with a specified certificate, which the law of the State provided should be granted under particular and exceptional conditions. The precise question before the Supreme Court of the United States was, whether the Iowa statute, which Rhodes was charged with having violated, could be applied to his act in moving the box of liquors from the railway station platform into the railroad freight-house, without rendering that statute repugnant to the constitution of the United States. The court held that it could not. In reaching this conclusion the court construed the "Wilson act" and held that the goods in question had not, within the meaning of that act, arrived in the State of Iowa when they crossed the line of the State, and did not do so until the interstate transportation contracted for by the railroad company which received the package at the point of shipment had been completed by the receipt of the goods at their destination and delivery to the consignee. The dominant idea seems to have been that the power of the State of Iowa did not attach to the intoxicating liquor while it was in course

of transit from the point of shipment to the point of destination, and that the liquor was still in transit, under the contract for interstate transportation, when it was being moved from the railroad station platform in Brighton, Iowa, into the freight-warehouse of the railroad company at that place. It is true the court, in the opinion, said the power of the State did not attach until the goods had been delivered to the consignee, but we think it was unnecessary to go that far in order to rule the question which the court was called upon to decide. The common carrier had contracted to both transport and deliver the goods, and the transportation was complete when the goods had reached the point of destination for which they were intended, whether the consignee ever called for and received them or not. They were then no longer in transit from the shipping-point to the point of destination ; and it seems to us they had certainly arrived within the State of Iowa, within the meaning of the " Wilson act," when they were deposited in the freight-warehouse of the railroad company at the terminal point of the shipment. But be this as it may, and taking the decision of the Supreme Court of the United States, construed in the light of the precise question which was involved in the case, to mean that the package of liquor had not, within the meaning of the " Wilson act," arrived in the State of Iowa until it had been delivered to the consignee thereof, we still do not think that it controls the case which·we have under consideration. No question of a sale of the liquor in Iowa, in the original package of its importation, was involved in that case. Rhodes was prosecuted for simply moving the liquor from one point to another, in the State of Iowa, contrary to the law of that State. In the present case there was a sale of whisky, in the city of Dalton, Ga., in the original package in which it had been shipped from the State of North Carolina; and the sole question now before us is whether this sale was, under the interstate-commerce clause of the Federal constitution, exempt from the operation of a penal law of this State, for the reason that such sale was effected before the consignee received possession of the whisky.

It is contended, as we have seen, that it was so exempt upon the theory that the whisky had not, within the meaning of the " Wilson act," arrived in the State of Georgia until it had been delivered to the consignee. Was the sale involved in this case consummated before the arrival of the whisky in Georgia, or after its arrival in

this State? We think it was after the arrival of the goods in Georgia. We do not think, in a case of this character, the mere fact that the package had not been delivered by the express company to the person to whom it was addressed by the consignor is sufficient to show that it had not arrived in this State. The purpose of the shipment must be taken into consideration. If that purpose had been simply that the package of liquor, upon reaching the hands of the express company's agent at Dalton, should, upon payment of the express charges thereon, be delivered to the consignee, then, perhaps, under the decision in the Rhodes case, the package had not arrived until the consignee received it from such agent. But as the whisky was shipped from a point in North Carolina to Dalton, Ga., in order that the consignor might, through the agent of the express company at that point, complete a sale thereof to the consignee, we think it had arrived in this State before such sale was completed and the goods delivered to the consignee. When it reached the office of the express company in Dalton, it was still the property of the consignor, and was to be so held by the express company until the stipulated price named by him should be paid by the consignee. For the purpose of perfecting the sale by the consignor to the consignee, the whisky had arrived in Georgia when it reached and was deposited in the express company's office in Dalton. The consignor could not have escaped the effect of the "Wilson act" by shipping the package from North Carolina to an agent of his in Dalton, Ga., and, through this agent, delivering it there to some one else, upon such third person paying a stipulated price for the whisky. Clearly, in such a case, when the package reached the hands of his agent at Dalton it would have arrived in Georgia. It seems to us that the principle is not changed by the mere fact that the consignor addressed the package directly to the party to whom he intended to sell it in Dalton, and made the agent of the express company at that point his agent to effect such a sale. Such was the effect of shipping the whisky to a named person at Dalton and instructing the common carrier to deliver it to such person when, and only when, he paid a stipulated price for it. When the express company's agent at Dalton, acting for the consignor, sold the whisky to the person to whom the package was addressed, it was in legal effect the same as if the consignor had himself made such sale in Dalton. We are of opinion that when the express

company, as the agent of the consignor, effected or completed the sale, in Dalton, Ga., to the consignee, it was not shielded, by the interstate-commerce clause of the constitution of the United States, from the operation of a penal law of this State.

*Judgment affirmed. All the Justices concurring.*