## SOUTHERN RAILWAY COMPANY *v.* HEYMANN.

1. Intoxicating liquors which have been shipped from Augusta, Georgia, to persons in Charleston, South Carolina, and which have reached Charleston and been placed in a freight-warehouse of the railroad company in that city to await the call of the consignees, have "arrived" in the State of South Carolina, within the meaning of the act of Congress of August 8, 1890, known as the Wilson act, which provides that "all fermented, distilled, or intoxicating liquors or liquids transported into any State or Territory or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such State or Territory, be subject to the operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory."

2. A railroad company is not liable for loss of property entrusted to it for shipment, occasioned by seizure of the property by an officer of the law under a prima facie valid authority.

Argued July 17. — Decided August 14, 1903.

Action for damages. Before Judge Brinson. Richmond superior court. October 29, 1902.

Cited, as to seizure by officer as excuse for non-delivery of goods by carrier: Hutch. Car. (2d ed.) §§ 170a, 390, 397–8; Hale on Bailments, 367–8; 5 Am. & Eng. Enc. L. (2d ed.) 237–8, 241–2; 4 Ell. R. § 1537, p. 2386; 48 *Ga.* 432; 60 *Ga.* 300, 313; 107 *Ga.* 512; 117 *Ga.* 63; 3 Am. & Eng. R. Cas. 492 (4 Cliff. 228); 4 Id. 210; 7 Id. 373, 381; 40 Id. 31; 55 Id. 671–2 (49 O. St. 489); 1 Black (U. S.), 101; 66 Mich. 143 (33 N. W. 298); 36 N. Y. 407; 25 Iowa, 60 (95 Am. Dec. 79); 44 Minn. 224 (20 Am. St. Rep. 566); 37 S. C. 1 (34 Am. St. Rep. 726, 735, and note); 8 S. C. 118; 6 Am. Rep. 213–15; Civil Code, § 2264.

*Joseph B. & Bryan Cumming*, for plaintiff in error; and brief of *William K. Miller*, under the Civil Code, § 5581.

*Samuel H. Myers*, contra.

CANDLER, J. Heymann, a wholesale liquor-dealer in Augusta, made two shipments of whisky over the Southern Railway to persons in Charleston, South Carolina. Upon reaching Charleston, the whisky was placed in a warehouse of the railroad company, where it was shortly afterwards seized by constables, under what is known as the dispensary law of South Carolina. That law provides that " the transportation, removal, or taking from the depot or other place, by consignee or other person, or the payment of freight or express or other charges . . upon any spirituous or malt, vinous, fermented, brewed, . . or other liquors, or ˉany compound or mixture thereof, . . is prohibited;" that " all such liquors, except when bought of a State officer authorized to sell the same, . . are declared to be contraband and against the morals, good health, and safety of the State," and that all such liquors are " to be seized, wherever found, without a warrant, and turned over to the State Commissioner." Heymann had guaranteed delivery of the whisky to the consignees, and was compelled to return to them the purchase-price which they had paid. He sued the railroad company, and obtained a verdict for the price of the whisky. The defendant made a motion for a new trial, which was overruled, and it excepted.

1. It is apparent that the decision of this case depends upon two questions: first, was the seizure of the whisky by the constables in Charleston a prima facie valid exercise of legal authority; and second, if it was, did that fact excuse the railroad company from

liability on account of the loss of the goods entrusted to it for shipment ? In order to determine the first question it becomes necessary to decide whether, at the time of the seizure, the interstate shipment of the goods had been completed ; for if they were still in the course of interstate transportation, the seizure by the constable was not even prima facie legal, for the very law under which the seizure was made had, prior to such seizure, been declared by the Supreme Court of the United States to be unconstitutional in so far as it interfered with interstate commerce. Scott *v.* Donald, 165 U. S. 58. It therefore follows that if the shipment had not been completed at the time the goods were seized, the railroad company would have no right to defend on the ground that it submitted to the superior authority, granting that such a defense, if established, would relieve it from liability. In support of the contention that the interstate shipment had not ended, counsel for the defendant in error relies upon the case of Rhodes *v.* Iowa, 170 U. S. 412. In that case the court held that an Iowa statute which prohibited any express or railway company from transporting or conveying intoxicating liquors between points, or from one place to another, within the State, without first having been furnished by the county auditor of the county to which the liquor was to be transported, or was consigned for transportation, a certificate that the person to whom the liquor was to be transported was authorized to sell such intoxicating liquors in such county, did not apply to a box of spirituous liquors shipped by rail from a point in Illinois to a citizen of Iowa at his residence in that State, while in transit from its point of shipment to its delivery to the consignee, without causing the Iowa law to be repugnant to the constitution of the United States; and that moving such goods in the station from the platform on which they were put on arrival, to the freight warehouse, is a part of the interstate-commerce transportation.

It is argued, that, under the ruling in the Rhodes case, an interstate shipment is not complete until the goods are delivered to the consignee; that not until such delivery can they be said to have "arrived," within the meaning of the act of Congress of August 8, 1890, commonly known as the Wilson act, which provides that all intoxicating liquors "transported into any State or Territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such State or Territory, be subject to the

operation and effect of the laws of such State or Territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." If this contention be correct, then the judgment of the lower court must be affirmed; for the railroad company could not relieve itself of liability by reason of the fact that it yielded to the exercise of a palpably illegal and unwarranted authority. We do not, however, draw the same conclusion from the argument in the Rhodes case as does counsel for the defendant in error, as we do not find in that case any authority for the proposition laid down, or any reason for a ruling on that proposition. The Rhodes case holds nothing more or less than that the movement of a package of goods from the platform of a station to a freight-warehouse (the goods having been shipped from outside the State) is a part of the interstate transportation, and that the servant of the railroad company so moving the package could not be convicted under the State statute under consideration. There was no question in the case as to whether or not the interstate shipment was completed upon reaching the warehouse, or if delivery to the consignee was necessary to complete such transportation; and while some of the language used by Mr. Justice White in delivering the opinion would seem to indicate that he considered delivery essential to an "arrival" under the Wilson act, that point was not in issue and was not ruled. We think it far more consistent with the evident purpose of the Wilson act to hold that when the goods have been placed in the railroad company's warehouse in readiness for the call of the consignee, the interstate transportation is at an end, the goods have "arrived" within the meaning of that act, and are at once subject to the State law passed in the exercise of its police power. Under the Rhodes case, so long as the goods are being moved to the ultimate end of their railroad journey, they are in the course of interstate transportation. Under the law of Georgia, when they are placed in a freight warehouse, after having been shipped within the usual time required for transportation, the relationship of carrier and shipper ceases, and the railroad company becomes simply a warehouseman, and this without the necessity of notifying the consignee of their arrival. *Georgia & Alabama*

*Ry.* v. *Pound*, 111 *Ga.* 7, and cases cited.    If, then, the goods were in Charleston in the hands of a bailee awaiting the call of the consignee, we fail to see how it can be said, without manifest absurdity, that in any sense they had not arrived in the State of South Carolina.

In support of the view here announced, we call attention to the recent case of State *v.* Intoxicating Liquors (Me.), 49 Atl. 670. There it appeared that certain liquors were shipped from Boston, Mass., to Machias in the State of Maine, consigned to the shippers. They arrived at Machias and were transferred to a freight-house used exclusively by the railroad company, where, on the afternoon of the day following their arrival and storage in the warehouse, they were seized by officers under the provisions of the Maine law. There had been no delivery of the liquors; and no notice given to any one of their arrival.    It was held " that the liquors in question, at the time of their seizure, had arrived within the State, so as to be subject to the operation and effect of the laws of this State enacted in the exercise of its police powers, within the meaning of the act of congress of August 8, 1890, commonly known as the ' Wilson act.' "    Commenting upon the case of Rhodes *v.* Iowa, supra, the court, in the opinion (p. 672) say : " It is true that in the opinion of the court this language is used : ' We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate-commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination, and delivery there to the consignee.'    But it does not seem to us that this was necessarily involved in the question decided.    If the act of moving the package from the platform to the freight-house was a part of the interstate-commerce transportation, as the court held it was, and the transportation was not consummated until the package had been moved to and deposited within the freight-house, so that the liquors had not arrived within the State until that act had been performed, then the Iowa statute could not apply to any part of such transportation, and it was unnecessary to a decision of the point involved to hold that such transportation was not completed until delivery to the consignee."    The same distinction as to the Rhodes case was made in the case of *Southern Express Co.* v. *State*, 114

*Ga.* 226, where it was held that "Relatively to a package of whisky shipped by express from another State to a named person in a designated city in this State, to be there delivered to him upon his paying to the agent of the express company at that point a stipulated price therefor, the penal laws of this State in reference to the unlawful sale of intoxicating liquors become of force when such package has reached the point of its destination and is being held by such express agent until the sale of the whisky has been completed in accordance with such directions of the consignor." It is urged, however, that the following language in the opinion in the *Southern Express Company* case is authority for the position taken by the defendant in error : " The purpose of the shipment must be taken into consideration. If that purpose had been simply that the package of liquor, upon reaching the hands of the express company's agent at Dalton, should, upon payment of the express charges thereon, be delivered to the consignee, then, perhaps, under the decision in the Rhodes case, the package had not arrived until the consignee received it from such agent." It is, of course, apparent that this language does not constitute a ruling by the court, but was merely a passing observation as to what might "perhaps" be the ruling made in the hypothetical case given, in the event the court should see fit to be guided by the obiter dicta of the Rhodes case. In the light of what has already been held in this opinion, it is unnecessary to say more on this subject than that the language quoted has no bearing, even arguendo, upon the case now under consideration.

2. The foregoing discussion leads us to the conclusion that the seizure of the whisky by the constables in Charleston was, at least, prima facie legal ; and it is next in order to consider whether the railroad company will be excused from liability for the loss of the goods by reason of having submitted to the authority of the officers. The contention of counsel for the defendant in error is that, as a common carrier, the railroad company was an insurer of the goods entrusted to it for shipment, and would only be relieved from liability by showing that the loss was occasioned by the act of God or the public enemy. Civil Code, § 2264, provides that in cases of loss the presumption of law is against the carrier, and no excuse avails him unless it was occasioned by the act of God or the public enemies of the State. But, as was said by Judge

McCay in *Savannah R. Co.* v. *Wilcox,* 48 *Ga.* 437, "this has always been qualified with certain limitations as to when his liability ceases, when he is discharged from further prosecution of his undertaking, as if . . they have been taken from him by legal process." "Like every other person, the carrier is bound, both by duty and necessity, to respect and yield to the paramount public authority in power at the place where his undertaking is to be performed. . . If the goods, without his fault, are or become obnoxious to the requirements of the police power of the State, and are injured or destroyed by its authority, as in the case of . . intoxicating liquors intended for use or sale in violation of law, the carrier can not be held liable." Hutch. Car. (2d ed.), §§ 210b, 210c. The reason for such a rule is at once apparent; for to hold that a railroad company is bound to resist the lawful authority in protecting the goods of a shipper would be to lay down a doctrine dangerously approaching anarchy. In the present case it was in evidence that the whisky was seized by duly appointed officers of law of the State of South Carolina, and that they were acting within the authority of a statute of that State. We are not prepared to hold that the railroad company was bound to test the validity of the statute under which the goods were seized, by resisting the seizure; for to do so would be to entirely change the contract of carriage and impose upon the carrier a burden greater than it undertook, or in reason and common sense ought to bear.

We conclude, therefore, that the verdict rendered by the jury in the court below was contrary to law, and should have been set aside on motion for a new trial.

*Judgment reversed.   By four Justices.   Lamar, J., disqualified.*