## SOUTHERN RAILWAY COMPANY *v.* BORN STEEL RANGE COMPANY.

Upon inability to locate a consignee and deliver to him a shipment of freight, a common carrier, if informed that the ownership of the property is in the consignor, is under a duty to hold the shipment a reasonable length of time subject to his order. While the consignor may be called on to pay charges for freight and storage, the carrier can not lawfully, pending an adjustment of its claims and without affording the consignor an opportunity to pay all just demands against him, dispose of the shipment at public auction sale for the purpose of enforcing collection of freight and storage charges. To do so amounts to a conversion of the property, notwithstanding the sale was brought about by officials of the carrier who were misinformed as to the true status of the matter.

Submitted June 11,—Decided August 17, 1906.

Action for damages. Before Judge Seabrook. Chatham superior court. January 26, 1906.

By consent of the parties this case was tried by the presiding judge, without the intervention of a jury, upon the following agreed statement of facts, together with certain documentary evidence thereto attached:    On October 25, 1901, the Born Steel Range Company, shipped by the Wheeling and Lake Erie Railroad Company, at Cleveland, Ohio, one range, with accompanying fixtures, to F. W. Foster, at Savannah, Ga. The shipment was transported by that company and its connecting lines, being duly turned over to the Southern Railway Company as one of the connecting carriers. By accepting and receiving the shipment the Southern Railway Company became a party to and adopted the contract entered into by and between the initial carrier and the plaintiff, and agreed to transport and deliver the shipment to the consignee in Savannah. The range and fixtures arrived in Savannah, over the Southern Railway, on November 11, 1901. In accordance with the local custom prevailing in that city as to giving notice to consignees, the Southern Railway Company sent notice through the mail, addressed to the consignee in Savannah, Ga., on November 11, December 21, 28, 30, and 31, 1901, of the arrival of the shipment, all of which notices were returned by the post-office authorities with the information that the consignee could not be located. The shipment was kept on hand by the Southern Railway Company, in Savannah, until June 7, 1902, when the same was sent to Toccoa, Ga., and disposed of at a sale of the accumulated freight of the company. A request was received by the Southern Railway Company from the plaintiff to return the shipment, which request was made before the shipment was sent to Toccoa and while it was in the possession of the company; but as storage charges had accumulated thereon, the company claimed it had no authority to waive same and it was necessary to take the matter up with the Southeastern Car Service Association. This consumed time, and when the Southern Railway Company was ready to reconsign the shipment to the plaintiff, it was ascertained that the range and fixtures had already been disposed of by the company at Toccoa, as aforesaid, for accumulated freight charges thereon in compliance with the code. The value of the shipment in October, 1901, was $74, and it was of that value at the time of its arrival

in Savannah. At the sale the range, etc., did not bring enough to pay storage, freight and other charges thereon. From letters attached to and forming a part of the agreed statement of facts, it appears that the explanation given by the railroad officials concerning the failure to deliver the shipment to the consignee or to return it to the plaintiff was, that the consignee was not a resident of Savannah and the local agent could not locate him; that the Born Steel Range Company, though aware that the shipment had arrived at destination, did not exhibit much interest in getting it disposed of, and when that company finally asked that the shipment be returned, storage charges to a considerable amount had accrued, and it took some little time to get that feature of the case straightened out; and that when the manager of the Southeastern Car-Service Association finally consented to cancel the storage, the shipment had been sent to Toccoa for sale, had been advertised in accordance with law, and the company realized nothing whatever, as the charges amounted to considerably more than the freight. These officials took the position that "it was the shipper's fault in not showing consignee's post-office address in the shipping directions," coupled with "the fact that the consignee himself did not apparently make an effort to get the range." It appears from a letter dated January 27, 1902, written by the Born Steel Range Company to an agent of the initial carrier, that the consignor had, after repeated efforts to have the shipment traced, concluded it was lost, and thereby notified the agent that unless the shipment was located by the first of the month, it would be charged to the account of his company; and if found, the shipper would require its return free of all expenses, "on account of being astray." The bill of lading, which was attached to the agreed statement of facts, recited that the consignee was "F. W. Foster, Savannah, Ga.," and did not disclose that his post-office address was McIntosh, Ga.

After hearing the argument of counsel, the trial judge announced his finding in favor of the plaintiff, and judgment against the defendant was subsequently entered up for the sum of $74, with interest from November 19, 1901. To this judgment exception is taken by the railway company.

*Osborne & Lawrence,* for plaintiff in error.

*O'Connor, O'Byrne, & Hartridge,* contra.

EVANS, J. (After stating the facts.)  It affirmatively appears that the defendant railway company duly performed its duty as a common carrier to safely transport the shipment to destination. After placing the shipment in a place of safety, the liability of the company as an insurer ceased and its liability as a warehouseman began, unless the local custom prevailing in Savannah as to giving notice to consignees entered into and became a part of the contract of shipment.  *Ga. & Ala. Ry.* v. *Pound,* 111 *Ga.* 6. However this may be, the company is not chargeable with any default in failing to observe this local custom or in not making delivery to the consignee, who could not be located.  Relatively to him, the company had a statutory right to dispose of the shipment at public auction, upon compliance with the requirements of the Civil Code, § 2303, after waiting upon him without avail until June 7, 1902, to appear and pay freight and warehouse charges. But some time prior to that date, the company had received notice that the consignor was the owner of the shipment; and even if it was under no legal duty to have previously notified the consignor if its inability to locate the consignee (*American Sugar Co.* v. *Mc-Ghee,* 96 *Ga.* 27), the company was under a duty, after becoming informed of the ownership of the property, to hold the shipment a reasonable time subject to the order of the consignor.  Of course the company had a lien on the property for freight charges (Civil Code, § 2287), and the consignor would be under an obligation to settle with the company for the freight and storage charges before exercising the right to receive the shipment at Savannah or to direct a reshipment of the property.  *Penn. Steel Co.* v. *Ga. R. Co.,* 94 *Ga.* 636.  Before it was sent to Toccoa for sale at public auction, the consignor had requested the railway company to return the shipment; the charges claimed thereon were not, it is true, tendered to the company by the consignor; yet the reason why this was not done appears to be that the officials of the company undertook to get the consent of the Southeastern Car-Service Association that the claim for the accumulated storage charges might be waived. As pointed out by counsel for the railway company, there seems to have been no consideration for this undertaking, and the company was not bound to carry out its understanding with the consignor as to remitting storage charges in the event the necessary consent of the association could be secured.  Still, the company's officials

having gratuitously entered upon the project, the consignor was relieved for the time being of offering to pay the company's demand, and until the matter was finally adjusted no right to sell the shipment at public auction could arise. Having induced the consignor to rely upon the promise to endeavor to remit a portion of the charges, the company is estopped from asserting that the promise was without consideration. It was at liberty at any time to abandon its efforts along this line and to demand, as a condition precedent to the surrender of shipment, payment in full of all lawful charges for freight and storage; but until such a demand and a refusal by the consignor to comply therewith, the company could acquire no right to sell the property upon the idea that there had been a default in making payment of its just demands. The sale of the property, pending the negotiations with respect to fixing the amount which the consignor would be called on to pay, was a conversion. That this conversion was brought about through a misunderstanding on the part of some of the company's officials as to the true status of the matter can not affect the question of the company's liability; it, at least, was bound to know how the matter stood, and is responsible for the wrongful acts of its officers in disposing of the property at auction sale. It may be that it was the right of the company to plead that it acted in good faith and through the mistake of some of its officers or servants, and for this reason should be allowed to set off against the plaintiff's claim such lawful charges as the plaintiff would have been under a duty to pay before getting possession of the shipment. But no such plea was filed, no evidence was submitted as to the amount of the charges the company was entitled to collect, and the sole contention urged upon the trial was that the company was not liable in any amount to the plaintiff. This being true, the admitted value of the property was the only measure by which the plaintiff's recovery could be fixed; and, ruling only upon the single question presented for our determination, viz., whether or not a conversion of the property was shown, we hold that the trial judge arrived at a proper solution of this question.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*