## 5632. SEABOARD AIR-LINE RAILWAY *v.* SALIOS.

1. Under the Civil Code, § 2730, the duty of a railroad company as a carrier of goods "ceases with their delivery at destination according to the direction of the person sending, or according to the custom of the trade."

2. In order to show that a railroad company was under a duty to notify consignees of the arrival of freight at destination, by reason of its observance of a usage to give such notice, it must be affirmatively proved that the usage was of an established and general nature. Such a custom as to perishable goods is not proved by testimony of three merchants in a city that it has been customary for the railroad company to notify them of the arrival of perishable goods shipped to them, and by testimony of two former employees of the railroad company's freight department that when working for the company they usually notified consignees of the arrival of perishable freight as soon as it was checked up.

DECIDED JUNE 22, 1914.

Action for damages; from city court of Elberton—Judge Grogan. March 13, 1914.

*Z. B. Rogers, H. J. Brewer, F. C. Shackelford, Cobb & Erwin,* for plaintiff in error.

*Ward & Payne,* contra.

ROAN, J. Salios brought suit against the Seaboard Air-Line Railway for damages on account of delay on the part of the defendant in notifying him of the arrival of a car-load shipment of bananas, consigned to him at Elberton. In the petition it was alleged that the fruit arrived in Elberton, over the defendant's road, on Saturday night or Sunday morning, in the month of August, and that the plaintiff should have been notified of the same on the following Monday morning at the latest, but that he was not notified until about six o'clock on Monday evening, too late to get the fruit out that night, and the bananas had then gone through a process of heating and had become overripe and unfit for the trade for which they were intended. He alleged that if notice of the arrival of the bananas had been given to him on Monday morning, he would have been able to sell them without loss, but, owing to the negligence of the defendant in not notifying him, he was forced to sell them at a sacrifice, and was thereby damaged in the sum sued for. The railway company, in its answer, admitted that the bananas arrived in Elberton on Sunday morning, and alleged that it notified the plaintiff's office of that fact about noon on Monday, but was informed, by the clerk that answered the telephone,

that the plaintiff was out of town, and that nothing could be done until his return that night. It was contended by the plaintiff that the railway company had established a custom in Elberton of notifying consignees of the arrival of freight marked to them, and that although, generally speaking, a common carrier is not bound to notify consignees of arrival of freight, the company had, on account of this custom, become bound to do so, and the failure to do so was negligence. On the trial, the plaintiff introduced evidence on this subject, and the agent of the railway company testified that it had never been the custom of the company to notify consignees when freight addressed to them arrived, and that whenever such notice was given, it was given merely through accommodation, and that all diligence had been used in notifying the plaintiff as soon as possible after the arrival of the shipment in question. The jury returned a verdict for the amount of damages claimed. The defendant filed a motion for a new trial, on the usual general grounds, which was overruled by the court, and the movant excepted.

1. "The responsibility of the carrier commences with the delivery of the goods, either to himself or his agent, or at the place where he is accustomed or agrees to receive them. It ceases with their delivery at destination according to the direction of the person sending, or according to the custom of the trade." This is the language of the Civil Code, § 2730. In the present case the obligation of the Seaboard Air-Line Railway as a carrier of freight, under this section of the code, ceased when the goods in question were delivered at their destination, unless the custom of the trade at that point established a different rule.

2. It was held in the case of *Georgia & Alabama Railway* v. *Pound,* 111 *Ga.* 6 (36 S. E. 312), that in order to show the existence of a custom varying this general rule at a particular place, by reason of the railroad company having observed a usage of notifying consignees of the arrival of goods, "it must be affirmatively proved that this usage was of an established and general nature, and that the notices given in pursuance thereof were of such character as to indicate, or to reasonably warrant the inference, that the company intended to remain liable as a common carrier until the consignee, in each instance, had had reasonable time and opportunity to remove his goods from its custody." Such a custom was not sufficiently proved in this case. One of the witnesses testified that he

was a merchant of the city of Elberton, (the place to which this fruit was shipped), and had received goods at that point arriving over the defendant's road, and that it had been customary as to such goods for the defendant company to give notice to him, either by telephone or mail, of their arrival, and, on the arrival of perishable goods, for the company to notify him either by telephone or message; and two other merchants of the town testified substantially to the same effect. Besides these, two former employees of the defendant company's freight department testified that when working for the company they usually notified consignees of the arrival of perishable freight as soon as it was checked up. The testimony of these witnesses was not sufficient to establish a custom of such general usage as to become by implication a part of the contract of shipment, and to bind the railroad company to its observance. Such a custom was not sufficiently proved by evidence which showed that occasionally the railroad company, through its agents, was in the habit of notifying one or more of its customers of the arrival of shipments to them of perishable goods. Such conduct may have been intended as acts of accommodation to its customers; if so, it should not and can not be construed to amount to a binding obligation on the part of the company to continue such accommodation at that point. A habit of notifying customers would not have this effect unless the custom was to notify all customers at all times, or was so general as necessarily to lead to the inference that each customer of the railroad company at that point under the same circumstances, would be entitled as matter of right to be accorded the same treatment with reference to shipments made to them. Especially is this true as to the plaintiff in this case, for nowhere in his testimony does he refer to such a custom or claim that any such custom was ever observed by the defendant as to any of his previous shipments. If this recovery could be sustained on any theory advanced by the plaintiff, it must be based upon the alleged fact that the railroad company failed in its duty, established by custom, to give him timely notice of the arrival of this shipment of bananas, and that by reason of this failure to give notice the damage accrued. Under the record as it stands, the verdict can not be sustained upon this theory. It follows that the court committed error when it overruled the defendant's motion for a new trial, one ground of which is that the verdict is without evidence to support it.

*Judgment reversed.*