301.  SOUTHERN RAILWAY CO. v. ROSENHEIM & SONS.

1. A declaration against a railway company, merely alleging the delivery of certain trunks and their contents into its custody, and a failure to redeliver, but not alleging that the trunks were to be transported or carried as baggage, or otherwise, does not set out a cause of action against the railway company as a carrier of baggage, but only as a warehouseman or a depository.

2. One who, having been a passenger, arrives with his baggage at destination, surrenders his checks, opens up the trunks in the baggage-room, and afterwards leaves the trunks in the baggage-room by permission of the baggage clerk, upon a statement that he will be going off again next day and will then recheck them, can not hold the railway company responsible, as a carrier of baggage, for the destruction of the trunks by fire during the night.

(a) The transaction, if not merely a personal one between the owner of the trunks and the baggage clerk, charges the railway company with no higher responsibility than that of a depository.

(b) This is so notwithstanding the owner of the trunks may have been the holder of a mileage book, good for transportation on the railway company's trains.

Action for breach of contract, from city court of Savannah— Judge Norwood.  September 14, 1906.

Argued April 30,—Decided May 9, 1907.

*Osborne & Lawrence, Edmund H. Abrahams,* for plaintiff in error.

*Garrard & Meldrim,* contra.

POWELL, J.  1. Rosenheim & Sons sued the Southern Railway Company and recovered a verdict.  The plaintiffs' declaration, omitting merely formal parts, is as follows: "(1) That the Southern Railway is a railroad corporation, having an office and agent for the transaction of its usual and customary business in the city of Savannah, County of Chatham and State of Georgia. (2) That on the 6th day of February, 1905, the said defendant then was and still is a common carrier of passengers for hire, and, as such common carrier of passengers for hire, had, on the 7th day of February, 1905, its depot at Waynesville, in the State of North Carolina.  (3) That on said 7th day of February, 1905, at Waynesville, in the State of North Carolina, in consideration that the plaintiffs would deliver to the defendant certain goods of the plaintiffs (more fully set out in an inventory hereunto annexed, marked exhibit 'A') to be by the defendant safely and

securely kept and redelivered to the plaintiffs on request, the said defendant promised the plaintiffs safely and securely to keep the said goods and to redeliver the same to the plaintiffs on request, and the plaintiffs delivered to the defendant, and the defendant received the said goods for the purpose and on the terms aforesaid, and the plaintiffs afterwards, and within a reasonable time in that behalf, requested the defendant to redeliver the same to the plaintiffs, and all conditions were performed, and all things happened, and all times elapsed necessary to entitle the plaintiffs to have the said goods safely and securely kept and redelivered by the defendant to the plaintiffs, as aforesaid; yet the defendant did not safely and securely keep the same and redeliver the same to the plaintiffs as aforesaid; whereby the said goods were wholly lost to the plaintiffs, to the damage of the plaintiffs in the sum of four hundred and ninety-one dollars and two cents, besides interest." Wherefore judgment is prayed, etc. The plaintiffs contend that this declaration sets out a case of liability against the defendant for a breach of its duty as a common carrier by the loss of a passenger's baggage; and insist that it is apt in form and substance for that purpose. The able and experienced attorney who appeared for the plaintiffs in this court also claims that the declaration is substantially in the form prescribed by Chitty. We think it plain that it sets out no such cause of action. It does not allege that the goods were delivered for the purpose of being carried by the defendant; and this is an essential allegation of Chitty's form in such actions. Chitty on Pleadings, *356. The suit, as we are constrained to view the declaration, is merely for a breach of a contract of bailment.

2. The evidence was likewise insufficient to sustain a verdict holding defendant liable as for the loss of passenger's baggage. Adams was a traveling salesman for Rosenheim & Sons. He lived at Waynesville, N. C. He arrived there on the defendant's train, Sunday afternoon, February 5, 1905; and with him came his trunks as baggage. The next morning he surrendered the checks, took charge of the trunks, opened them up in the depot, and sold a customer a bill of goods from the samples contained therein. He did not take the trunks away, but left them in the storage room of the depot, telling the agent, who also performed the duties of baggage clerk, that he would be going off again next

morning to Addie, or to some other place west, and that he would leave them in the storage room over night and check them the next morning. The train next morning was due at 9:15 o'clock. That night the depot was burned and the trunks and their contents were thereby destroyed. Adams had a mileage book, good on the Southern Railway. The trunks and their contents belonged to Rosenheim & Sons. The court charged 'the jury that under these circumstances, if the agent consented to the trunks remaining in the depot overnight, the company would be liable, unless the fire was occasioned by act of God.

At common law, as well as by the law of this State, no excuse avails a carrier for the loss of the baggage of one who sustains to it the relation of passenger, except act of God, irresistible accident, or destruction by public enemy. Civil Code, §2280; *Dibble* v. *Brown*, 12 *Ga.* 217. A similar rule prevails in North Carolina. See Revisal of 1905, §2264. For baggage in possession of the carrier, and not within the protection of the above rule, the liability of the carrier is that of a depository for hire (warehouseman), with the duty of only ordinary diligence; or that of a naked depository, with responsibility attaching only in a case of gross negligence, according to the circumstances of the case. *Georgia R. Co.* v. *Thompson*, 86 *Ga.* 328. See also Civil Code, §§2921, 2922, 2928. We presume that the same rule prevails in North Carolina, as it is a matter of general law. If there has been no delivery to the carrier, but his agent, without authority, agrees to take care of the baggage as a matter of accommodation, the agent pro hac is the agent of 'the owner of the baggage, and not of the carrier, and no responsibility against the latter attaches to the transaction. *Georgia R. Co.* v. *Thompson*, supra. A baggage clerk has implied authority to receive baggage on behalf of the carrier only for a reasonable time prior to the departure of the train on which it is to be carried. Hutch. Carr. (3d ed.) §1256; Lake Shore Ry. Co. *v.* Foster, 104 Ind. 315.

From the instructions to the jury, appearing in the record, it is manifest that the trial court entertained the view that because Adams had a mileage book, good on the defendant's lines of railway, he was entitled to the rights of a passenger, as to these trunks and their contents. Let us see if any such relation was sustained. "The owner of the property must, of course, stand in

relation of passenger to the carrier, in order to fix upon him liability as a carrier of baggage. The carriage of the baggage is ex vi termini incidental to the carriage of the owner as a passenger." Hutch. Carr. (3d ed.) §1274; *Atlanta Terminal Co.* v. *American Baggage Co.,* 125 *Ga.* 677. "The passenger has the right to deliver his baggage to the carrier such time before the starting of the train upon which he intends to take passage as may be reasonably necessary for obtaining a ticket and checking the baggage. From the time delivery is thus made, the carrier will be responsible for its safety, as a common carrier. If, however, an earlier delivery to the carrier be made, his custody will be that of a warehouseman only, unless he has consented to hold it subject to his common-law liability. But the question as to when the carrier's liability as such with respect to baggage will begin will frequently depend upon his custom or manner of doing business at the particular station where it is received. And in order to impose upon the carrier the liability of an insurer of the baggage, it must be delivered to and accepted by an agent who is authorized to receive it, or delivery must be made under such circumstances that an acceptance by the carrier will be implied." Hutch. Carr. (3d ed.) §1281. The mere fact that one has a ticket, or that he has paid the price of transportation, or that he has made a contract of carriage, does not render him in all cases a passenger; he must have submitted himself to the carrier's protection and have imposed upon himself an obligation to the carrier for performance of his own side of the contract of carriage. "But so long as the party merely entertains the wish or intention, no obligation has arisen on either side, and he is at liberty to change that intention at any moment." Hutch. Carr. (3d ed.) §1015; Webster *v.* Fitchburg R. Co., 161 Mass. 298 (24 L. R. A. 521, and cases cited in the footnote); *Central R. Co.* v. *Perry,* 58 *Ga.* 461. In the Webster case the person alleged to be a passenger had a ten-trip ticket; which establishes a similarity to this case, wherein Adams had a mileage book.

We think it manifest that Adams did not, under the facts stated, place or intend to place himself under the obligations of a passenger, at the time he left the baggage in the depot. His intention to do so on the morrow did not place the carrier under the immediate duty. He did not ask for a check for his baggage

then, although the North Carolina statute prescribes that "a check shall be affixed to every parcel of baggage when taken for transportation by the agent of a railroad company, and a duplicate thereof given to the passenger." Revisal of 1905, §2623. If the agent had checked the baggage, the carrier would have had a lien upon it, not only for the freight thereon, but also for the owner's transportation to the point to which it was checked. Adams was not in a position at that time to make a definite contract on this subject, for he had not then decided whether he was going to Addie, or to some other place, on the next morning. It is true he had a mileage book, and that he was in a position to claim transportation for himself on the company's trains, and to have his baggage placed in the company's responsibility a reasonable time in advance of the departure of the train on which he should elect to travel; but the mere possession of this mileage book did not hold him in the relation of a passenger, wherever he might be, but only at such times and under such circumstances as it was reasonable for the relation to be regarded as existing. What a mileage book is falls within common knowledge. It may be that prior to the enactment of our anti-pass law the judiciary of this State did not have sufficient personal information as to mileage books to take accurate judicial cognizance of them; but now the judges share with the general public this common knowledge. A mileage book is a contract of carriage, having attached thereto coupons, one for every mile; each coupon being in two parts, one part for the passenger's fare, the other for his baggage. When the baggage is checked, the baggage portion of sufficient coupons, according to the distance, is torn off; and no more baggage can be checked upon the mileage book until the remainder of these coupons, representing the carriage of the passenger, has been detached. This explains why Adams naturally did not wish to check his baggage before he definitely decided where he was going. It would have cost him something to have changed his mind or to have abandoned the trip. It was not bad business judgment for him, under the circumstances, to leave the trunks in the care of the depot agent over night at his own risk, instead of placing them in the company's care and paying for the resulting protection by a surrender of baggage coupons out of his mileage book; but having taken this risk, neither he nor his employ-

ers, who actually owned the trunks and their contents, but who must claim through him, can now charge the railway company with a liability which he was unwilling to pay them to assume. Applying the facts as they appear in the record to the law as we find it, we are constrained to hold that the transaction was either a personal one between Adams and the station agent, or, if there was enough in the circumstances to make the agent's custody that of the railway company, the latter held the trunks as a mere naked depository; and in neither event is the railway company liable for the loss, no gross negligence appearing.

*Judgment reversed.*