### ST. LOUIS & S. F. R. CO. et al. v. GID-DINGS.

No. 7736—Opinion Filed Oct. 3, 1916.

Rehearing Denied Jan. 23, 1917.

Second Petition for Rehearing Denied

June 6, 1917.

(165 Pac. 904.)

Carriers—Loss of Baggage — Liability — Statute.

Under section 807, Revised Laws of 1910, the liability of a carrier of baggage of a passenger intrusted to its care is that of a common carrier, and in the event of loss, unless the same is occasioned by the act of God or unavoidable accident, the carrier is responsible therefor.

(Syllabus by Hooker, C.)

Error from County Court, Oklahoma County; William H. Zwick, Judge.

Action by Della T. Giddings against the St. Louis & San Francisco Railroad Company, and James W. Lusk and others, receivers. Judgment for plaintiff, and defendants bring error. Affirmed.

R. A. Kleinschmidt and Fred E. Suits, for plaintiffs in error.

Ledbetter, Stuart & Bell, for defendant in error.

Opinion by HOOKER, C. On January 16, 1915, the defendant in error telephoned the Union Ticket office at Oklahoma City and engaged a Pullman reservation from Oklahoma City to Muskogee on the Frisco train which was due to leave Oklahoma City at midnight. About 6 o'clock p. m. of the same day she sent her trunk to the Frisco passenger depot by an experienced baggageman.

who deposited the same on the platform of the company at the depot in the place where the custom and rules of the company required baggage to be deposited, and at the time he deposited the trunk on said platform he was seen by the baggageman of the company, and the employes of the company subsequently saw the trunk of the defendant upon the platform where it had been deposited. About 10 o'clock of the same night she went to the passenger depot, procured her a ticket to Muskogee, paid for her Pullman reservation, and attempted to locate her trunk, but was unable to do so.

It is admitted that the company received this baggage, but it contends that its liability, if any, is that of a warehouseman, and not of a common carrier. The company asserts that because the defendant in error had not purchased a ticket, and because it was necessary for directions to be given to the company before the transportation of said baggage could commence, that liability as a common carrier could not attach in this case, and that from the time of the delivery of said baggage to it until the purchase of the ticket, or the giving of those directions by the defendant in error, it held the baggage only as a warehouseman. With these contentions we cannot agree. The authorities are uniform upon the proposition that one may be entitled under a certain state of case to the rights of a passenger before he purchases a ticket, and the law imposing this liability upon the company should be and is extended to the baggage of passengers likewise before a ticket is purchased.

The evidence here discloses that for years it had been the custom and practice of the company to require baggage received by it for transportation to be deposited at this particular place, so that the same might be weighed, and that was done largely for the convenience of the employes of the company. The agent of the defendant in error had been in the business of delivering trunks for years and was acquainted with this custom of the company, and upon this occasion he complied with it as he had been in the habit of doing before. The baggageman of the company saw him deliver the trunk and place the same at the customary place, and under the facts and circumstances he must have known that this trunk was delivered to the company for transportation, and not for storage. Section 807 of the Revised Laws of 1910 is as follows:

"The liability of a carrier for luggage received by him with a passenger, is the same as that of common carrier of property."

Under the view we take of this statute if the company received this trunk as baggage,

its liability as a common carrier is fixed, and it is estopped from now asserting that it received the same as a warehouseman. The object of this statute is to fix the liability of a common carrier for baggage received as that of a carrier of property, which is that of an insurer, and it can only be relieved from liability by the act of God or unavoidable accident. In the case of Kansas City, M. & O. Ry. Co. v. Fugatt, 47 Okla. 727, 150 Pac. 669, L. R. A. 1916A, 545, this court said:

"Though the real character of the articles intended as baggage, but which are not properly such, is not stated to the carrier when it accepts them for carriage, if from the facts and circumstances surrounding their acceptance it ought to know that they are not properly baggage, knowledge on its part of their true character will be presumed, and it will be considered as having assumed the liability of a common carrier. Hutchinson on Carriers, § 1250, and Elliott on Railroads, § 1649."

Further in this case it is said:

"The liability of a common carrier for the loss of baggage, at common law, is, in section 1651, Elliott on Railroads, defined to be: 'The general rule is that the carrier is liable for baggage as a common carrier, that is, it is liable for the loss or injury to the baggage at all events, except where the loss or damage is caused by the act of God, or "unavoidable accident," in the sense in which the term is sometimes used and the act of the owner or by public enemies.' And it is thus stated in 3 A. & E. Enc. of Law, 546: 'The liability of a carrier for baggage * * * intrusted to its care is that of an insurer; and its liability unless specially restricted is the same as its common law liability as a carrier of 'goods.' *, * *, The rule announced is the correct one where custody and control of the baggage has been surrendered into the carrier's keeping by the passenger."

In the case of Cone v. So. Ry. Co., 85 S. C. 524, 67 S. E. 779, 21 Ann. Cas. 159, it is said:

"The general rule is that the liability of a carrier does not begin until delivery and acceptance of the goods, but it is not always necessary to show actual delivery and express acceptance, for there may be an implied or constructive delivery and acceptance, or the matter may be determined by the custom of the carrier. 4 Elliott on Railroads, § 1403; Hutchinson on Carriers, § 118: 'The carrier may assent to the delivery of baggage at its station without notice to its agents; and this assent may be implied from its custom and course of business in allowing baggage to be deposited at its depots: but whether such delivery is to be regarded as binding the carrier is a question of fact for the jury to determine.' Such liability

may arise before the purchase of a ticket or demand for check to one intending to become a passenger, who has his baggage placed at the proper place on the station premises within a reasonable time before the departure of the train." See authorities cited in opinion.

In 14 Ann. Cas. 912, the note attached to the case of So. Ry. Co. v. Bickley, it is said:

"The giving of a piece of baggage into the possession of the agent of a carrier and the acceptance thereof by him for transportation constitutes a sufficient delivery to render the carrier liable." See authorities cited.

"A delivery to, and acceptance by, a carrier is shown where it appears that an intending passenger sent a trunk to the depot the night before his departure, as was customary with passengers taking the morning train, and that the trunk was locked up in the carrier's baggageroom. Green v. Railway Co., 41 Iowa, 410.

"Where baggage is deposited at the place set apart for the receipt of baggage, and the agent of the carrier is notified thereof and expresses his consent thereto, there is a sufficient delivery to render the carrier liable." See authorities cited.

"And if baggage is deposited upon the platform near the baggageroom and the baggageman, upon being notified, gives directions to leave it there, a sufficient delivery is shown." [Lake Shore & Michigan So. R. Co v. Foster] 104 Ind. 293 [4 N. E. 20, 54 Am. Rep. 319].

"In an action against a common carrier, to recover the value of a trunk and its contents alleged to have been lost by the negligence of defendant at its depot, it appeared that an expressman took the plaintiff's trunk, at his request, to the depot mentioned. The trunk had a card fastened on it, marked with the plaintiff's name and the place of his destination. The expressman placed the trunk by the side of a baggage crate, situated opposite a window in the ticket office, through which it might be seen. He informed the agent of the defendant in charge of the depot where the trunk was, and such agent replied 'all right,' and told two men, who were in the depot, to take care of it, whereupon the expressman left the depot. The plaintiff arrived later in the day and purchased a ticket. Upon applying for a check for his baggage, the trunk could not be found. The court, affirming a judgment for the plaintiff, said: 'It is not easy to see what further act could be required of the plaintiff in order to make the delivery complete. No further act of his could put the property more fully within defendant's control.'" See authorities cited.

"In Hickox v. Naugatuck R. Co., 31 Conn. 281, 83 Am. Dec. 143. it appeared that the plaintiff took his trunk to a station at 11 a. m. and requested that it might be checked for the next train, which started at 3 p. m.;

that he was informed that it was not the custom to check baggage until about 15 minutes before the time when the train should leave, whereupon he left his trunk in the care of the agent of the company in the baggageroom of the station; and that at the customary time it was checked for him and put on the cars, and that he went on the same train. Certain articles were removed from the trunk, but when and where did not appear. The action was framed on the theory that the carrier was liable as carrier, and it was urged that if the articles were taken after it was left at the station and before it was checked, there could be no recovery. The court held, however, that the liability as carrier commenced when the trunk was given into the care of the agent."

In 4 Elliott on Railroads, sec. 1651, it is said:

"The liability of the company as a common carrier begins, as a rule, at the time the baggage is delivered to it for its transportation unless the time of such delivery be an unreasonable length of time before the owner's intended departure. In order that the liability as a common carrier should exist, it is not always necessary that the passenger should have purchased a ticket, nor that he should even make the journey which he intends to make. As persons often become entitled to the rights of passengers before the purchase of a ticket, so the liability of the carrier for baggage often begins before the purchase of a ticket or even before the company becomes liable to the owner of the baggage as a passenger. Where a person in good faith intends to take passage on a railway train or the like and delivers his baggage to the company a reasonable time in advance of the anticipated journey. it seems that the company will be liable for such baggage as a common carrier from the time of such delivery and acceptance. And in such cases the company may be liable although the person does not purchase a ticket or make the proposed journey, as for instance. where he is prevented from so doing by the loss or destruction of the baggage before the journey begins."

In Woods v. Devin, 13 Ill. 747, 56 Am. Dec. 483, it is said:

"A common carrier of passengers is responsible for the baggage of a passenger. His duty in this respect is the same as that of a common carrier of goods; and he can only excuse himself for the nondelivery of the baggage of a passenger by showing that it was lost by the act of God or of the public enemy. His responsibility commences when the baggage is delivered to him or his authorized agent. Camden and Amboy Railroad v. Belknap, 21 Wend. [N. Y.] 354. His compensation for carrying the baggage is included in the fare of the passenger. [Orange County Bank v. Brown] 9 Wend. 85 [24 Am. Dec. 129]; [Hawkins v. Hoffman] 6 Hill, 586 [41 Am. Dec. 767]. Prepayment of the

fare is not necessary in order to charge the carrier for the loss of the baggage. [Citizens Bank v. Nantucket Steamboat Co.] 2 Story, 16 [Fed. Cas. No. 2730.]"

In Logan v. Railroad Company, 11 Rob. (La.) 24, 43 Am. Dec. 199, it is said:

"Liability of carrier attaches when baggage is received to be transported on any part of the road."

In the case of Ladue v. Griffith, 25 N. Y. 364, 82 Am. Dec. 361, it is said:

"When a person is both carrier and warehouseman, it is well settled that if the deposit of the goods in the warehouse is a mere accessory to the carriage and not subject to any particular order of the owner, or if there deposited for the purpose of being carried further, the responsibility of the party having them in charge is that of a carrier."

In Green v. Milwaukee & St. Paul Railroad Co., 38 Iowa, 100, it is said:

"It is not claimed that defendant would be liable without a delivery, either actual or constructive, of the property to its agent or servant. That a delivery may be made at the proper place of receiving such baggage under the express assent or authority of the carrier without notice to its employes will not, we presume, be disputed. It is equally clear upon principle that this assent may be presumed from the course of business or custom of the carrier. Upon evidence of this character contracts based upon business transactions are constantly established. The citation of authority is not required to support this position. See [Merriam v. Hartford & New Haven R. Co.] 20 Conn. 356· [52 Am. Dec. 344.] The instruction which is the foundation of plaintiff's objection directs the jury that there was no evidence of a delivery of the trunk to the defendant. In this we think there is error. There was evidence tending to show a course of business on the part of defendant, a custom, to receive baggage left at the station house, as in this case, without notice to defendant's servants. Upon evidence of this character, it was proper that the facts should have been left to the determination of the jury, whether there had been a delivery of the property within the rules above announced—whether a course of business—a custom, had been established, to the effect that a delivery of baggage at the station house without notice was regarded by defendant as a delivery to its servants, and whether plaintiff's trunk was received under this custom."

Under the view we take of the record in this case, it must be held that the company accepted the trunk of the defendant in error as baggage for the purpose of transporting the same to Muskogee, Okla., where the defendant in error intended to go at the time she delivered the trunk to the company, and that the company, having accepted the same as baggage for transportation, is by the pro-vision of section 807 of the Revised Laws of 1910 made liable as a common carrier, and is therefore responsible to the defendant in error for the loss of this baggage.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.