## 11460. SAVANNAH & STATESBORO RAILWAY COMPANY v. FIRST NATIONAL BANK OF STATESBORO.

Irrespective of whether or not the defendant was liable as a common carrier (which it is unnecessary to decide in this case), there was evidence showing liability on the part of the defendant as a warehouseman, and, the verdict in favor of the plaintiff having been approved by the trial judge, this court will not control the judgment overruling a motion for a new trial based on the general grounds only.

DECIDED JULY 19, 1920.

Action for damages; from city court of Statesboro — Judge Proctor. March 8, 1920.

*Johnston & Cone,* for plaintiff in error.

*Fred T. Lanier,* contra.

SMITH, J. The First National Bank of Statesboro brought suit against the Savannah & Statesboro Railway Company as initial carrier, for the value of 24 bales of sea-island cotton, which were destroyed by a great conflagration. The cotton in question was delivered to the defendant railway company by C. M. Rushing, and bills of lading were issued to him, with order to notify a certain cotton factory in the city of Savannah. The plaintiff, First National Bank of Statesboro, advanced money to pay for the cotton shipped, and became the transferee of the defendant's bills of lading. The defendant, in defense to the plaintiff's contention that it was liable both as a common carrier and as a warehouseman, urged that it had fully complied with its contract as a common carrier, and that its liability, if there was any, was only that of warehouseman. The parties went to trial before a jury on the issue thus raised, and a verdict was returned in favor of the plaintiff for the value of the cotton sued for. Defendant filed a motion for a new trial, and to the order of the judge overruling the motion it excepted, and now asks that the verdict be set aside solely on the ground that it is contrary to law and evidence, and without evidence to support it.

Irrespective of whether or not the defendant was liable as a common carrier, which would require the exercise of extraordinary care in the preservation and protection of the property entrusted to it, there was sufficient evidence to authorize the jury to find that the defendant was liable as a warehouseman. Briefly summarized the evidence adduced on the trial shows that the cotton, at the time it was destroyed by fire, was stored on a pier within 500 feet

of a large dilapidated frame building, between 75 and 100 feet high, and from 400 to 500 feet long, covered with pine shingles. It was in this building that the fire originated. On the west side of the pier, and near this building, was a shed in which there was stored a large quantity of nitrate of soda. One of the doors on the west side of the pier where the cotton was stored was open, thus exposing the cotton to a shed or building in which were stored chemicals and other combustible matter. One witness for the plaintiff testified that when he reached the island, after the fire had been in progress for some time, the hose was locked in a box and had not been put in use. This witness also testified that it was his opinion that if they had had sufficient water, the fire could have been checked even after he reached the island, but that the "flow of water was so poor that they resorted to using buckets to put out the small fires; . . that they had no water pressure. The pressure would not throw the water more than 10 or 12 feet, or maybe 15 feet." The chief of the fire department of the city of Savannah testified that he had, prior to the fire, called the railroad's attention to the defects in its equipment, and had pointed out that in case of a fire, the wiring of the electric pump would be the first thing to burn, and that they would have no power to force water, and that this is exactly what occurred before the fire in question was of any consequence at all. This witness further testified that about thirty per cent. of the hose "was bursted and no account, and would not stand any strain on them," and that this rotten condition could have been ascertained by the railroad company if it had tested the hose. Testifying further this witness said: "We had a low tide that day, but I won't say we had the lowest tide we ever had, but one of the lowest. The west winds had blown the tide out, and when the electric pump-house eventually got fixed so they could pump, the water lacked that much (indicating several inches) getting up to the suction; and, by the way, that has not been remedied. The tide flowing so low as that is a thing that does not happen often, . . but unfortunately that was one of the days. It is true that the pump could have been built so that would not have happened; they could have extended the suction low enough, so as to prevent the water getting out of reach at any time."

This evidence was, as above suggested, sufficient to authorize

the jury in finding that the defendant did not exercise ordinary care and diligence (the degree of care required of a warehouseman) to prevent the destruction of the cotton by fire. The Supreme Court has said that in determining what was extraordinary diligence, a jury should take into consideration "the situation and surrounding facts, including the existence of an emergency," *Atlanta & West Point R. Co.* v. *Jacobs Pharmacy Co.,* 135 *Ga.* 113 (68 S. E. 1039); and we know of no reason why the same rule should not apply to the consideration and determination of whether or not a defendant had used ordinary care and diligence.

*Judgment affirmed. Jenkins, P. J., and Stephens, concur.*