12537.　CENTRAL OF GEORGIA RAILWAY CO. *v.* OWENS.

1. "Whether the contract based on a bill of lading of an interstate shipment issued pursuant to the Act to Regulate Commerce has been discharged is a Federal question." Southern Railway Co. *v.* Prescott, 240 U. S. 632 (36 Sup. Ct. 469, 60 L. ed. 836).

(*a*) "A contract of a bill of lading of an interstate shipment is still in force until actual delivery to the consignee."

(*b*) "Under a stipulation in a bill of lading on an interstate shipment that the carrier shall be liable as warehouseman only, for goods after arrival at destination and not removed within the specified time, the carrier is liable only for negligence; and if the loss admittedly occurs by fire the burden is on the plaintiff to prove negligence, notwithstanding the rule may be different under state law."

(c) Under the facts of this case the court erred in charging the jury "the provisions of the statute law of Georgia to the effect that in all cases of bailment after proof of loss the burden of proof is on the bailee to show proper diligence."

DECIDED JANUARY 19, 1922.

Appeal; from Chattooga superior court — Judge Wright. April 30, 1921.

Owens sued the Central of Georgia Railway Company in a justice's court on an account which is as follows:

" Summerville, Ga., July 5, 1917.

" Central of Georgia Railway Company, Dr.

" To J. S. Owens, Cr.

" To two Myers pumps delivered to said railway company on or about May 1, 1917, and held by said railroad company as bailees for hire, and which have not been delivered, and which said railway company fails and refuses to deliver. ............ $55.00

" To freight and demurrage paid on said pumps.  ...    3.36

                                                  " 58.36 "

The railway company filed a plea denying liability.  By consent the case was appealed to the superior court.  Upon the trial a verdict was rendered in favor of the plaintiff for the full amount sued for.  The defendant made a motion for a new trial, which was overruled, and it excepted.  The record shows that the pumps, for the loss of which suit was brought, were shipped from a point in Ohio, and, after reaching their destination at Summerville, Georgia, and while in the depot of the railway company, were destroyed by fire which occurred " about 3 or 4 o'clock in the morning during a severe storm," and while it was " thundering and lightning."  The agent of the railway company testified that there had been no fire about the place the day before; also that upon the arrival of the pumps he gave the plaintiff written notice of this fact, and the plaintiff sent to him a check covering the freight and demurrage.  The bill of lading contained the following clause:  " For loss, damage, or delay caused by fire occurring after forty-eight hours  exclusive of legal holidays after notice of the arrival of the property at destination or at port of export (if intended for export) has been duly sent or given, the carrier's liability shall be that warehouseman only."

J. Branham, Maddox & Doyal, John D. & E. S. Taylor, for plaintiff in error.

*Lee J. Langley,* contra.

BLOODWORTH, J. (After stating the foregoing facts).

It is well settled in Georgia that where goods are shipped into this State from another, so long as they are being moved to the ultimate end of their railroad journey they are in the course of their interstate transportation, and " when they are placed in a freight warehouse, after having been shipped within the usual time required for transportation, the relationship of carrier and shipper ceases, and the railroad company becomes simply a warehouseman." *Southern Ry. Co.* v. *Heymann,* 118 *Ga.* 619 (45 S. E. 492) ; *Kight* v. *W. & T. R. Co.,* 127 *Ga.* 204 (1) (56 S. E. 363) ; *Ga. & Ala. Ry. Co.* v. *Pound,* 111 *Ga.* 6 (1) (36 S. E. 312). So that under the laws of Georgia as applied to the facts of this case, as well as under the clause in the bill of lading which is copied in the statement of facts, when the goods for the loss of which suit in this case was brought were destroyed by fire, the railway company was holding them as a warehouseman. This being true, the case under consideration is controlled by the ruling in Southern Ry. Co. *v.* Prescott, supra. The facts in that case and in this one are quite similar. In that case Mr. Justice Hughes, who delivered the opinion of the court, said (p. 639) : " It is apparent that there had been no actual delivery of the nine boxes [the nine boxes of shoes for the recovery of which suit was brought]. The payment of the freight had no greater efficacy than if it had been made in advance of the transportation. . . The actual service in holding the goods continued, and we must look to the bill of lading to determine the legal obligation attaching to that service. Viewing the contract as set forth in the bill of lading as still in force, the measure of liability under it must also be regarded as a Federal question. As it has often been said, the statutory provisions manifest the intent of Congress that the obligation of the carrier with respect to the services within the purview of the statute shall be governed by uniform rule in the place of the diverse requirements of State legislation and decisions [citing several cases]. And the question as to the responsibility under the bill of lading is none the less a Federal one because it must be resolved by the application of general principles of the common law. . . It was explicitly provided that in case the property was not removed within the specified time it should be kept sub-

ject to liability 'as warehouseman only.' The railway company was therefore liable only in case of negligence. The plaintiff, asserting neglect, had the burden of establishing it. This burden did not shift. As it is the duty of the warehouseman to deliver upon proper demand, his failure to do so, without excuse, has been regarded as making a prima facie case of negligence. If, however, it appears that the loss is due to fire, that fact in itself, in the absence of circumstances permitting the inference of lack of reasonable precautions, does not suffice to show neglect, and the plaintiff, having the affirmative of the issue, must go forward with the evidence [citing a number of cases]. In the present case it is undisputed that the loss was due to fire which destroyed the company's warehouse with its contents including the property in question. The fire occurred in the early morning when the depot and warehouse were closed. The cause of the fire did not appear, and there was nothing in the circumstances to indicate neglect on the part of the railway company. The trial court denied the motion for a direction of a verdict and charged the jury that 'the burden of showing that there was no negligence is on the defendant.' Applying the rule establishing by the State decisions [citing cases], the Supreme Court of the State overruled the defendant's objection and sustained the judgment. 99 So. Car. 424. It has been recognized by the State court . . . that the rule it applies is a 'somewhat exceptional rule,' to which the court adheres 'notwithstanding the great number of opposing authorities in other jurisdictions.' For the reasons we have stated, we think that the obligation of the railway company was not governed by the State law, and that, in this view, the exceptions of the plaintiff in error were well taken."

Under the foregoing ruling, the court erred in giving in charge to the jury " the provisions of the statute law of Georgia to the effect that in all cases of bailment after proof of loss the burden of proof is on the bailee to show proper diligence."

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*