15453.   ALLEN *v.* SOUTHERN RAILWAY COMPANY.

JENKINS, P. J. 1. "The consignee of property delivered by another to a common carrier for shipment is presumed to be the owner, and presumptively a right of action exists in his favor for any injury or damage to the property in transit; but the presumption that the consignee is the owner may be rebutted, and where it appears that the consignee has no general or special property in the goods shipped, and incurs no risk in their being transported, he can not maintain an action ex delicto for the loss of, or for any damage to the property. . . Where the consignor makes a contract with a common carrier for the shipment of goods which belong to. the consignee, the former may recover in assumpsit for a breach of the contract, and the latter may recover for any loss or any damage to the property, and a recovery by either of the full amount of damage caused by the carrier would bar a recovery of such damage by the other. . . There are many cases holding that though the consignee may not be the real owner, if he has a special interest in the property shipped, he may maintain an action for the loss, or for any damage to such property in transit, and in such action may have a recovery of the full value of the property where lost, or full amount of damages to the property where it is damaged. . . 'The ownership need not be extensive, and an agent, factor, broker, bailee, or other person having rights in the property to be protected may maintain an action, and recover both for himself and the general owner.'" *Southern Ry. Co.* v. *Miko,* 136 *Ga.* 272, 273, 274 (71 S. E. 241). In the instant case, while the consignor had reserved title to the injured property under retention-of-title notes, the consignee vendee, having paid to the consignor vendor $200 of the purchase-price of the machinery, of the value of $600 at the time and place of injury, had such a special property and interest as would sustain a right of action against the carrier for its injury. See Civil Code (1910), § 4482; *Brown Shoe Co.* v. *Chattahoochee Lumber Co.,* 121 *Ga.* 809 (3) (49 S. E. 839); *Emanuel County* v. *Thompson,* 3 *Ga. App.* 225 (59 S. E. 603). See also *Ryals* v. *Seaboard Air-Line Ry. Co.,* 158 *Ga.* 303, 32 *Ga. App.* 453

(123 S. E. 12, 733). It appears from the record that after the injuries sued for, the property was sold by the consignor vendor "before the court-house door in Monroe county for $410," in a sale "on the foreclosure of the retention-of-title notes." While the consignee vendee, under the rule stated, might "recover both for himself and the general owner," holding in trust for the latter its portion of the recovery, the amount realized by the vendor under its forclosure proceedings would, however, be chargeable against its interest, and should be deducted by the jury from such amount as they might, under the evidence, determine to be the market value of the property at the time and place of injury, if they should find for the plaintiff. No question here arises as to any assignment of the cause of action, or as to any conflicting right or claim by the consignor vendor.

2. The plaintiff consignee sued in tort for the recovery both of an item of expense, amounting to $6, incurred on account of damage to the axle of a locomotive, alleged to have been damaged by the defendant's negligence as a common carrier while the machinery was in transit loaded on a flat car, and on account of alleged damage to the property after its arrival at destination and before unloading. The trial court granted a nonsuit, to which the plaintiff excepts. There is no cross-bill of exceptions by the defendant carrier to the order overruling its demurrer to the petition, and no question is raised as to any misjoinder; and that order is the law of the case. The jury being authorized to find, under the presumption against the common carrier, that the axle was broken by its negligence while the property was in transit, it was error as to this item of damage to grant a nonsuit.

(*a*) "In all cases necessary expenses consequent upon the injury done are a legitimate item in the estimate of damages." Civil Code (1910), § 4505. It is unnecessary to show that an item of such expenses has been actually paid. It is enough that an actual legal liability therefor has been incurred. *Murphey* v. *Northeastern Construction Co.*, 31 *Ga. App.* 715 (3); 17 C. J. 805, 806, 803. In the instant case testimony of the plaintiff that the consignor "charged" the plaintiff "six dollars for repairing the axle," and that, while this amount was yet unpaid, "I have got to pay him," was sufficient to authorize a recovery therefor against the defendant.

3. "A warehouseman is a depositary for hire, and is bound only for ordinary diligence." Civil Code (1910), § 3503. It is the statutory rule in this State that "in all cases of bailment after proof of loss, the burden of proof is on the bailee to show proper diligence." Civil Code, § 3469. The word "loss," in this section, has been construed to mean injury or damage to the goods as well as their destruction or disappearance. *Richmond & Danville R. Co.* v. *White*, 88 *Ga.* 805, 813 (15 S. E. 802). The State statutory rule as to the burden of proof in bailments is applicable to intrastate shipments such as in the instant case, although, under the ruling of the United States Supreme Court, a different rule prevails as to interstate shipments. *Central of Ga. Ry. Co.* v. *Owens*, 28 *Ga. App.* 140, 142, 143 (110 S. E. 339); *Davis* v. *Pearlman*, 29 *Ga. App.* 12 (1) (113 S. E. 44); *So. Ry. Co.* v. *Prescott*, 240 U. S. 362 (36 Sup. Ct. 469, 60 L. ed. 836).

(*a*) "Where goods are shipped by railway, and arrive at their destination

within the usual time required for transportation, and are there deposited by the company in a place of safety and held by them ready to be delivered on demand, their liability as common carriers ceases (unless the custom of the trade is shown to be otherwise as to delivery), and that of warehouseman begins." *Southwestern R. Co.* v. *Felder,* 46 *Ga.* 434, (1); Civil Code (1910), § 2730; *Kight* v. *Wrightsville R. Co.,* 127 *Ga.* 204 (1, 3) (56 S. E. 363). "The carrier, in addition to its compensation for the carriage of goods, has the right to charge for their storage and keeping, as a warehouseman, for whatever time they remain in its custody after reasonable opportunity has been afforded the owner to remove them. . . Where the carrier's duty ends with the transportation of the car and its delivery to the customer, and no further service is embraced in the contract, the carrier, after a reasonable time has been allowed for unloading, is as much entitled to charge for the further use of its car as it would be for the use of its warehouse." *Miller* v. *Ga. R. Co.,* 88 *Ga.* 563, 572 (15 S. E. 316, 18 L. R. A. 323, 30 Am. St. Rep. 170). Ordinarily, "where a railroad company has transported a carload of goods and notified the consignee of their arrival, the delivery is complete when the agent of the consignee verifies the goods in the car and gives his receipt for the same;" and "where the agent of the consignee removes most of the goods, but leaves some in the car on account of approaching night, and the car is broken open after having been closed and sealed by the agent of the railroad company, and some of the goods stolen therefrom, the railroad company, if liable at all, is liable only for gross neglect, as a gratuitous bailee." *Kenny Co.* v. *Atlanta & West Point R. Co.,* 122 *Ga.* 365 (50 S. E. 132). Where, therefore, freight has been paid, a receipt for the shipment given by the consignee or his agent; and the delivery is completed without any relationship whatever existing between the consignee and the railroad either as a common carrier or as a warehouseman for compensation, the carrier, by the mere voluntary assistance of its agent in closing or sealing the car, where no storage or demurrage is charged or chargeable, becomes at the most no more than a gratuitous bailee. But where, even though the duty of the railroad as a common carrier may have terminated, it expressly or impliedly assumes the duties of a warehouseman in relation to a car in which goods are stored, so that, under the statute or rules of the public-service commission, it becomes entitled to charge storage and demurrage for the use of its car after the expiration of free time, it is liable, in case of injury to the goods, not for gross neglect as a mere gratuitous bailee, but as a warehouseman for any lack of ordinary care; and in such a case, after proof of the injury, the burden is on the carrier to show proper diligence. Under the particular evidence for the plaintiff in the instant case, the jury were authorized, though not compelled, to find that the breaking of the axle of the machinery shipped was due to the negligence of the defendant as a common carrier; that the necessity of removing and repairing this axle prevented the plaintiff consignee from promptly removing the goods from the car before their injury; that the consignee, through his agent employed to unload the freight, paid the freight and receipted for the shipment without knowledge that the previous negligence of the defendant in breaking the axle of the machine would

prevent its prompt unloading; that the freight was received for unloading under such a mistake as to the facts; that the railroad, with knowledge of these facts, while the axle was being repaired so that unloading could be practicably effected, permitted the car to remain with the goods thereon on its side-track, without any protest, from December 16 to January 5, and by its freight agent, at the place of destination agreed to look out for the freight so that it would not be damaged by being struck by trains coming on the siding. The jury were thus authorized to find, even if they should have found that liability of the defendant as a common carrier, under the particular facts developed by the plaintiff's testimony, did not exist, that the defendant was nevertheless a warehouseman for hire. Under this view of the case, the burden being upon the defendant after proof of the injury and damage, it was error to grant a nonsuit. See *Savannah & Statesboro Ry. Co.* v. *First Nat. Bank,* 25 *Ga. App.* 529 (103 S. E. 887).

4. The court did not err in excluding a letter offered by the plaintiff, purporting to be signed by a person as "freight-claim adjuster" after the alleged injuries, and containing a statement to the effect that the defendant had caused the fall of the machinery from the car; there being no evidence to identify the person writing the letter as an authorized agent of the defendant, or showing that it was written in the scope of his duties as such an agent. *Torbet* v. *Cherokee Ins. Co.,* 141 *Ga.* 773 (2) (82 S. E. 134); *Amicacola Marble Co.* v. *Coker,* 111 *Ga.* 872 (36 S. E. 950); *Wilcox* v. *Hall,* 53 *Ga.* 635 (4); *Atlas Assurance Co.* v. *Kettles,* 144 *Ga.* 306 (4) (87 S. E. 1).

*Judgment reversed; Stephens and Bell, JJ., concur.*

DECIDED DECEMBER 15, 1924. REHEARING DENIED FEBRUARY 11, 1925.

Action for damages; from Monroe superior court—Judge Persons. February 5, 1924.

STATEMENT OF FACTS BY JENKINS, P. J.

The consignee of an engine and boiler, which were shipped mounted on wheels, brought an action in tort against the carrier, for damages on account of the knocking of the machinery from the car on which it was mounted by the backing of a train of the defendant against the car while it was standing on a side-track at the place of destination, awaiting unloading. One item is claimed as expense incurred in repairing a broken axle, amounting to $6, on account of the defendant's alleged negligence while the property was "in transit." The other item for the market value of the machinery, $600, is for the alleged subsequent injury on the side-track. No exception is taken to any improper measure of damages. With regard to the title and interest of the plaintiff consignee in the property, the plaintiff testified: that the consignor had retained the title, by retention-of-title notes, but that prior to the injury the

plaintiff paid $200 of the purchase-price; that the machinery was worth $600 at the place of destination before it was knocked from the car; and that, while there was some proof that the injury had rendered it worthless, it was shipped by the carrier back to the consignor and repaired, and then sold by the consignor vendor on the retention-title-notes for $410. With reference to the custody of the machinery and the relation of the parties at the time of the injury on the side-track, while the proof showed that the plaintiff's agent employed to unload the machinery paid the freight and signed a receipt to the defendant carrier, there was evidence to indicate that this was done before it was discovered that a broken axle of the engine (injured as contended while in transit) would prevent the practicable unloading of the property until the removed axle could be returned to the consignor, repaired, and replaced, so that the machinery could be rolled from the car, in the difficult physical surroundings where the car was placed on the side-track; that when the injury to the axle was discovered, the unloading was stopped; and that, while awaiting the repair and return of the axle, the machinery either was knocked or fell from the car, and the injury sued for resulted. The plaintiff's evidence tended to show, that at the place where the car was located and in the condition of the broken axle, the property could have been unloaded and removed only by taking it across the main track of the railroad, and that this, with the available equipment, would have been difficult, and would have required "a good deal of time," if not impracticable, and would have blocked "the main line and trains that are passing every few minutes."

The plaintiff contends, that the axle was broken by negligence while in the custody of the defendant as a common carrier, and that since this injury prevented the removal of the property from the car before the subsequent injury, the defendant remained liable as common carrier for this later damage. The defendant contends, that, since the car was placed on the side-track at the place of destination, and the freight paid and receipted for, this was a delivery; and that, even though there was evidence that the freight remained in the car without objection by the defendant, and that the defendant's freight agent was requested by and promised the plaintiff to look out for the freight by not letting the train crew "hit the car hard," but to "back in on it easy if they had to go in

on that siding," the defendant was neither a common carrier nor a warehouseman, but merely a gratuitous bailee, liable only for gross neglect. There was evidence that, after starting to unload the machinery and removing the broken axle, the plaintiff's employees "put [four] cross-ties under" the machinery, and "set the fire-box down on it so it couldn't fall off," but "knocked all of the blocks from under the wheels," which had been thus braced while in transit. The defendant contends that the removal of these blocks caused the fall of the machinery. There was no eye-witness to the alleged striking of the car on the side-track by a train of the defendant; but a "blundering noise" was heard, and the machinery was found lying on the ground, while a "locomotive was standing on the track." The trial court directed a nonsuit, on the ground that there was "no evidence to show that the machinery was damaged other than by the breaking of an axle by the defendant company, and no evidence to show that the machinery could not have been moved from the flat car of the defendant company with broken axle." To this judgment the plaintiff excepted.

*Claude Christopher,* for plaintiff.

*Harris, Harris & Popper, Samuel Rutherford,* for defendant.

## ON MOTION FOR REHEARING.

JENKINS, P. J.   1.   The 1st division of the original syllabus has been slightly amended so as to avoid any possible construction that this court intended to rule that the plaintiff, as owner of a special property and interest in the subject-matter, if he should recover under the rules stated "both for himself and the general owner," could recover the full market value at the time and place of injury, without any deduction for whatever amount would be chargeable against the consignor-vendor's interest. Such interest of the holder of the retention-of-title notes would be chargeable with such amount as the holder realized upon the debt in the public sale of the property under the notes; and from any amount which the jury might find for the plaintiff, as the market value of the interests both of himself and of the vendor, there should be deducted the amount which may be shown to have been received by the vendor at such public sale.

2.   In its motion for rehearing the defendant carrier contends, that, in the ruling in the second division of the syllabus, to the effect that the trial court erred in granting a nonsuit as to the

damage claimed against the carrier for injuring the machinery while in transit, this court overlooked specified portions of the evidence demanding a verdict for the defendant. The evidence referred to is that of the plaintiff's witness, Greeley Gresham, as follows: When "we started to roll it (referring to the boiler in question) the axle broke, . . and there was part of the axle looked like a fresh break. . . It would have taken a pretty heavy blow to break the axle the way it was broken. I don't think it could have been broken with a hammer." The defendant contends that the presumption against a common carrier on account of the running and operation of its trains "does not exist where the plaintiff's evidence shows conclusively that the goods were receipted for in good order, and that it was a physical impossibility for the damage to have resulted through any negligence of the carrier." It is further contended "that the plaintiff's evidence showed that the break in the axle was an old break, and that portion which was a fresh break might have easily been caused by knocking the blocks out from the boiler with a hammer and letting the axle down suddenly;" or that the "falling apart of the axle might have been caused by the proper movement of the train, for which the defendant would not have been liable;" and that it was necessary for the plaintiff to negative both of these theories. The defendant is apparently in error as to the giving of a receipt for the goods "in good order" by the plaintiff consignee or his agent. The only reference to a receipt in the record is to documentary evidence, as follows: "One freight bill for $54.00, and payment receipted for by J. H. *Burch, Agent of Southern Railway Company,* on December 16, 1922. Consignee A. H. Allen, Dames Ferry, Ga. Shipped from Inman Yards, Ga., by Woodruff Machinery Mfg. Co., Atlanta, Ga. Weight 20,000." The following notation is written across the face of the receipt: *"Rear axle broken. J. H. Burch, Agt."* It thus appears from the receipt, signed not by the consignee or his agent, but by the defendant's agent, that at the time of the payment of freight and alleged delivery to the consignee the axle in question was "broken." While the evidence of the witness Gresham is not clear as to the nature and causes of the break, it does not appear that his statement, "when we started to roll it off (the car) the axle broke," was intended as an admission, or necessarily meant, that the moving of the car broke the axle, as appears from his evi-

dence following, that "part of the axle looked like it was an old break and part appeared to be a fresh break," and that "a part of it was rusty between the break." While it was for the jury to pass upon such questions, they were authorized to find that the meaning of the witness was merely that, because of the existing breaks referred to, the axle *gave way* when the moving was started. Nor does the defendant seem to contend, under its language above quoted, that the evidence demanded a finding that the break was caused by the attempted moving. Since there was no receipt by the consignee for the goods as in good order, and the evidence did not demand any finding that the plaintiff knew or should have known that the attempted moving of the machinery would cause the axle to give way, a verdict was not demanded for the defendant, but it was for the jury to pass upon all the evidence in connection with the statutory presumption against the carrier, and say what was the actual and proximate cause of the injury to the axle, alleged to have occurred while in transit, and whether the proven facts showed that the presumption of negligence against the carrier had been successfully rebutted. The onus was not upon the plaintiff to negative the theories suggested by the defendant as to the cause of the break, since the evidence did not demand a finding that either theory had been prima facie established.

3. It is further contended that, as to the injury to the machinery while on the defendant's side-track, the evidence conclusively showed that the defendant was no more than a naked depositary or gratuitous bailee, liable only for gross neglect; that there was therefore no presumption against the defendant as a warehouseman; that "the court, in holding that defendant would be liable by reason of the fact that the freight agent agreed to look out for the freight so that it would not be damaged by being struck by trains on the siding, overlooked the cases of *Ga. R. &c. Co.* v. *Thompson*, 86 *Ga.* 327 (13 S. E. 561), and *So. Ry. Co.* v. *Rosenheim*, 1 *Ga. App.* 766 (58 S. E. 81) ; and that such a promise was a mere personal undertaking by the agent. In the latter of these cases it was held that "One who, having been a passenger, arrives with his baggage at destination, surrenders his checks, opens up the trunks in the baggage-room, and afterwards leaves the trunks in the baggage-room by permission of the baggage clerk, upon a statement that he will be going off next day and will then recheck them, can not hold the

railway company responsible, as a carrier of baggage, for the destruction of the trunks by fire during the night. . . The transaction, if not merely a personal one between the owner of the trunks and the baggage clerk, charges the railway company with no higher responsibility than that of a depository" without compensation. "In neither event is the railway company liable for the loss, no gross negligence appearing." In that case it appeared that the relationship of carrier and passenger had completely terminated, and that the plaintiff "surrendered the checks [for his baggage], took charge of the trunks, opened them up in the depot, and sold a customer a bill of goods" therefrom. Under such circumstances, where the agent merely permitted the plaintiff, for his convenience in rechecking the trunks the following morning, to leave them during the night in the baggage-room, after they had been *actually delivered,* and where the plaintiff was neither charged nor made liable for storage, manifestly the defendant did not become a warehouseman. In the former case (86 *Ga.* 327 (2), 328) the ruling was merely that, "on the trial of an action against a railroad company for the loss of a passenger's trunk, it was not error to charge that if the company failed to deliver it and undertook to deposit it in its warehouse, its liability would be that of a warehouseman, and it would be bound to use ordinary diligence in taking care of it, and if it failed, the plaintiff would be entitled to recover;" and the court in its opinion said, "Whether the company delivered the trunk to the plaintiff, or to its own agent to be deposited in its warehouse, was a question of fact to be determined by the jury."

While the question is not without difficulty, under the particular facts of this case as set forth in the original syllabus and the statement of facts, the record not disclosing that the plaintiff consignee had, with full knowledge of the break and the result to the axle of attempting to move the machinery, given a receipt to the carrier for the property as in good order, and not demanding a finding that the plaintiff had taken it into his possession with the duty of removal from the car and side-track, and that delivery had thus been properly and fully accomplished by the carrier, the court adheres to its original judgment and syllabus, that, as to the damage claimed from the knocking of the machinery from the car on the defendant's side-track, the grant of a nonsuit was erroneous.

*Motion for rehearing denied. Stephens and Bell, JJ., concur.*