**SCHAFF, Rec., v. SAMUELS.**

No. 13862—Opinion Filed Feb. 3, 1925.

Rehearing Denied March 17, 1925.

1. **Carriers—Baggage — When Liability of Carrier Begins.**

Although the manual delivery of luggage be made to a common carrier, the latter is not liable therefor as insurer unless and until the relation of passenger and carrier arises, since luggage is incidental to the carriage of the passenger.

2. **Same — Passenger — Relation Inferred from Circumstances.**

Whilst such relation ordinarily is implied from circumstances, there must be circumstances from which an express or implied acceptance of the prospective passenger may be inferred in order to create such relation.

3. **Same—Liability as Warehouseman.**

Where the trunk of an intending passenger is deposited at the usual and customary place for the reception of luggage by a carrier, but the relation of passenger and carrier does not arise between the parties, the carrier is liable for such trunk as warehouseman.

(Syllabus by Estes, C. )

Commissioners' Opinion, Division No. 2.

Error from District Court, Oklahoma County; Edward D. Oldfield, Judge.

Action by Mike Samuels against Charles E. Schaff, as receiver of the properties of the Missouri, Kansas & Texas Ry. Co. et al. Judgment for plaintiff against the receiver alone, who appeals. Reversed with directions.

M. D. Green and H. L. Smith, for plaintiff in error.

Wilson, Tomerlin & Threlkeld, for defendant in error.

Opinion by ESTES, C. Parties will be referred to as they appeared in the trial court, inverse to their order here. Mike Samuels, plaintiff, had judgment against said receiver for $662.32, verdict and judgment being also for defendant Williams. Williams, in the transfer business, about six o'clock p. m. on Sunday, in 1921, at the request of plaintiff, a traveling man, stopping at a hotel in Oklahoma City, transferred a sample trunk and a sample case of the latter from the hotel to the depot of the defendant. Plaintiff intended to purchase a ticket and go to Cushing on the eleven o'clock p. m. train. On account of a rain storm he changed his mind and decided that he would not make said trip, but would go to Chickasha the next day on another road. This he did. Williams deposited said sample case in defendant's baggage room in the presence of the agents, but gave no verbal notice of ownership or destination, of either the trunk or case. The evidence tends to show that the sample trunk was deposited on a platform a few feet from the depot, being the usual and customary place for placing trunks of passengers. Williams attached to the trunk and case claim checks issued by himself, a duplicate of each of which was delivered to plaintiff. On the following morning, pursuant to the change of plaintiff's plan and at his direction, Williams repossessed the said sample case for plaintiff, but was unable, with the assistance of defendant's employes, to recover said trunk, which was thereby lost to the plaintiff. Plaintiff neither purchased a ticket to Cushing, nor in any manner advised the defendant of his intended passage, except as stated. He did not go in person to the depot.

1, 2. After instructing upon the question of delivery, the court informed the jury that if plaintiff intended to become a passenger upon its railway at the time said trunk was delivered to the baggage department of the company, notwithstanding plaintiff may have changed his mind and decided to become a passenger on some other road, nevertheless the relation of passenger and carrier existed as between plaintiff and the railway company, and the latter would be liable to the former as insurer therefor, if the company failed to redeliver the trunk. The giving of this instruction was error. The statutes of this state provide:

"The liability of a carrier for luggage received by him with a passenger is the same as that of a common carrier of property."

Thereby the carrier is liable as insurer for luggage as for freight. It is elementary that in order to fix upon the defendant liability as a carrier of said trunk that plaintiff must have stood in the relation of passenger to defendant. The carriage of the trunk was ex vi termini incidental to the carriage of the plaintiff as a passenger. Southern Ry. Co. v. Rosenheim & Son (Ga. App.) 58 S. E. 81; Hutch. Carr. (3rd Ed.) sec. 1274. No duty arose with respect to plaintiff as passenger until he had offered himself and had been impliedly or actually accepted for carriage. If plaintiff never became a passenger his trunk never became luggage. Id. Some courts have held that the relation between carrier and passenger is contractual and is created only by contract, express or implied. Farley v. Cincinnati, H. & D. Co., 108 Fed. 14, 47 C. C. A. 156. But the relation may

exist independent of any contract between the parties themselves. As shown in McNeill v. Durham & C. R. Co., 135 N. C. 682, 47 S. E. 765, 57 L. R. A. 227, the law imposes upon a common carrier certain duties and liabilities which inhere in the nature of his calling, and these are imposed by law upon the carrier upon consideration of public policy, independent of contract, and arise from the nature of the public employment. Such is the more enlightened view. Schuyler et al. v. Southern Pac. Co. (Utah) 109 Pac. 458, 468. The purchase of a ticket is not indispensable to the existence of the relation of carrier and passenger. Under some circumstances the relation may not exist after the purchase and delivery of ticket. Such relation may sometimes exist with respect to one intending to take passage and before purchase of ticket. No good purpose would be served by discussing the numerous circumstances under which said relation may or may not exist. As stated in Webster v. Fitchburg R. Co., 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521, there is hardly ever any formal act of delivery of one's person into the care of the carrier, or of acceptance by the carrier of one who presents himself for transportation, and so the existence of the relation of passenger and carrier is commonly to be implied from circumstances. Sometime between six o'clock and the departure of the train at eleven plaintiff had changed his intention to become a passenger. We hold simply that, under the circumstances of this case, there was no express or implied acceptance by defendant of the plaintiff as a passenger. Since such relationship did not arise, plaintiff's trunk did not become luggage.

3. Under said statute, defendant occupied the same relation to said trunk as the carrier of freight delivered into its possession where the relation of the parties is not that of carrier and consignee or owner. In Kansas City, M. & O. Ry. Co. v. Cox, 25 Okla. 774, 108 Pac. 380, it is said:

"The relation of common carrier and shipper not having arisen, the railway company's liability was that of a warehouseman, and it was only liable for failure to exercise ordinary care. It was error to charge it with a higher degree of responsibility."

St. Louis & S. F. R. Co. et al. v. Giddings, 65 Okla. 236, 165 Pac. 904, is distinguishable. There, the intended passenger telephoned the company and made a Pullman reservation. She sent her trunk to the depot at six o'clock p. m., and about ten o'clock thereafter, she went to the depot, procured her ticket, paid for her Pullman and attempted to locate the trunk, but was unable to do so. There, the company asserted that because the intended passenger had not purchased a ticket, and because it was necessary for directions to be given to the company before the transportation of the baggage could commence, that liability as a common carrier could not attach, and that from the delivery of the trunk until the purchase of the ticket, or the giving of directions by the passenger, the company held the trunk as warehouseman. This contention was disapproved, the court announcing that, under a certain state of case, one may be entitled to the rights of a passenger before purchasing a ticket, and that the law imposing this liability upon the company should be and is extended to the baggage of passengers likewise before a ticket is purchased. We think the logic of that case is that by reserving a Pullman for the passenger, the company impliedly accepted her as a passenger, and eo instante, the relation of passenger and carrier arose. That case, in effect, holds that such relation may arise without the passenger going in corpore upon the premises of the company because the trunk was lost in the time intervening the reservation of the Pullman by phone and entrance to the passenger depot. In the instant case, plaintiff did nothing of the kind and did no other act sufficient to create the relation of passenger and carrier. The rules of the Giddings Case for determining delivery may be applicable to the instant case, for if the trunk was not delivered to defendant, defendant was liable on no account. If plaintiff's trunk was delivered—a matter for the jury, though practically conceded by defendant—defendant was bound to use ordinary care to keep and preserve the same as a warehouseman.

We deem it unnecessary to discuss the other errors assigned. Because the said instruction held defendant to the liability of insurer of the trunk rather than that of warehouseman, let the judgment be reversed and the cause remanded for new trial.

By the Court: It is so ordered.

Note.—See under (1, 3) 10 C. J. p. 1200; (1926 Anno); (2) 10 C. J. p. 622.